ALBANY,
Nov. 1830.

The People
v.
Superior Court
of New-York.

THE PEOPLE, on the relation of E. G. Oebricks, *vs.* THE
SUPERIOR COURT OF THE CITY OF NEW-YORK.

The *granting or refusing of a new trial* is not a matter of *discretion*, where, on
an application for such trial on the ground of newly discovered evidence,
it clearly appears that, with ordinary diligence, the evidence might have
been produced at the former trial ; or where the newly discovered evi-
dence consists merely of additional facts and circumstances going to es-
tablish the same points principally controverted when the trial was had,
or of additional witnesses to the same facts and circumstances : and where
a court of subordinate jurisdiction grants a new trial in a case where those
objections exist, a *mandamus* will be awarded, directing the rule granting
a new trial to be vacated.

Where there is doubt upon the point of *negligence*, or as to the *materiality* of
the evidence alleged to be newly discovered, the granting or refusing of a
new trial is a matter of discretion, and this court will not interfere to con-
trol or coerce the exercise of the discretion of the subordinate court.

The *discretion*, the exercise of which by inferior tribunals or officers this court
will not undertake to regulate or coerce, is that *discretion which is not and
cannot be governed by any fixed principles or rules :* thus, this court will not
interfere to regulate the *amount* of compensation of certain public officers,
where a board of supervisors are authorized by law to allow such amount
as they shall judge reasonable ; nor to prescribe to certain officers, to
whom is committed the power of granting licences to inn-keepers, &c.
the granting of a licence to a particular individual, they having the power
to grant or refuse a licence to whom they please ; nor will they interfere
with the decisions of inferior courts as to the *opening* or *refusing* to open a
default, or as to the granting or refusing to grant a new trial, on the ground
of the verdict being against *the weight of evidence.* *It seems*, however, that
in a case where the evidence should appear to be all on one side, and clear
and satisfactory in opposition to a verdict, and a new trial should be deni-
ed—or where an inferior court should deny to a party the benefit of an es-
tablished rule of practice, not depending at all upon circumstances, a man-
damus would be granted.

Nov. 18th.

MOTION for a mandamus to vacate a rule granting a new
trial. An action of assumpsit was brought in the superior
court of the city of New-York, in favor of E. G. Oebricks
against The President and Directors of the Phœnix Bank,
to recover the amount of a bill of exchange for $2,500,
drawn by one Heckscher, in favor of himself, on N. Pearce
of Baltimore, payable at sight and endorsed by Heckscher
to the plaintiff; which bill of exchange was deposited with

the defendant for collection, and the amount thereof was claimed from them on the ground of neglect in transmitting the bill to Baltimore, by reason whereof it was alleged that the bill had not been paid. The bill was left at the bank on *Saturday*, the thirtieth day of May, 1829, and was not forwarded until *Monday*, the first day of June. Had the bill been forwarded on Saturday, and reached Baltimore in due course of mail, it would have been paid; but not being forwarded until Monday, when it reached Baltimore the drawee had failed. The defence relied upon at the trial was, that the course of business of the Phœnix Bank in relation to bills and notes, payable out the *city of New-York*, left at the bank for collection, was, to forward them per mail on the same day they were left, to the places on which the bills were drawn, or at which the notes were payable, provided they were left at the bank before the hour of *twelve o'clock at noon*, and that the bill in this case was not left until after that hour.

ALBANY,
Nov. 1830.

The People
v.
Superior Court
of New-York.

On the trial of the cause, *Heckscher*, the drawer of the bill, testified that he left the bill at the bank on *Saturday*, the 30th May, 1829, a short time *before twelve o'clock*, and, as he thought, about half past eleven o'clock, and that he was at the bank but *once* on that day. He detailed a variety of circumstances which induced him to speak with certainty as to the particulars of the transaction. On the part of the defendants, Mr. *Delafield*, the cashier, testified that about *eleven o'clock* in the morning of the 30th May, Heckscher called on him in the bank, and asked him whether he could transmit a bill on Baltimore on that day; that he told him that if the bill was sent to the bank before twelve o'clock of that day, it would be attended to. Heckscher did not deliver the bill to him, nor did he see it until *Monday* after. The witness further testified that he saw Heckscher only *once* at the bank on *Saturday*. *T. Davis*, a teller in the bank on the 30th day of May, testified that it was his duty to receive all foreign bills and notes left with the bank for collection; that he received the bill in question on that day; that it was handed to him *between twelve and one o'clock*, nearer one than twelve; that if the bill had been left with him before

twelve o'clock, it would have gone on by that day's mail. He was confident as to the delivery of the bill to him, the matter having been much talked of at the bank, and having made a strong impression upon him. *T. Hook*, a clerk in the bank, having charge of the accounts of foreign credits, testified that on *Tuesday*, the *second* day of June, Heckscher called at the bank and inquired whether the amount of the bill in question was passed to his credit; he told him that his inquiry was too soon, that they would not know the fate of the bill until *Thursday*, it not having been sent on until Monday. Heckscher said he had expected the bill would have been forwarded on Saturday, but found no fault, and expressed no censure that the bill had not been forwarded on Saturday, but appeared very anxious to ascertain its fate. Under a charge from the presiding judge that if they believed that the bill in question had been left with the defendants *before twelve o'clock*, they ought to find for the plaintiff, otherwise for the defendants, the jury found for the plaintiff.

A motion was then made for a new trial, on the ground of newly discovered evidence. The defendants produced an *affidavit* of one Edward Russell, in which he deposed that on the 30th May, 1829, he was a clerk in the Phœnix Bank, and kept the book in which all foreign bills and notes left in the bank for collection were registered; that the course of business of the bank in relation to the receipt and transmission of such bills and notes was as follows: the bills and notes were handed by the dealers with the bank in the first instance to the third teller, were entered by him in the dealers' book and placed in a pigeon-hole appropriated to the reception of such bills and notes; that they were then taken by him the *deponent*, entered in the register kept by him, and handed to the chashier to be transmitted to the places on which the bills were respectively drawn, or at which the notes were payable; who accordingly transmitted them on the same day, if they were handed into the bank at or before twelve o'clock. He further deposed that his position in the bank was at a desk immediately next to the desk of the third teller; that on 30th May, *T. Davis* was third teller, and that

he and Davis on that day occupied their respective desks; that on that day he saw Heckscher hand Davis a bill of exchange; that this was at about one o'clock in the day as he believed, and, as he thought, rather past one o'clock; that Davis placed the bill in the pigeon-hole, from which it was taken by him the deponent; but that this being subsequent to twelve o'clock he did not enter it in the register until the Monday following, when he did enter it and hand it to the cashier; that he left the bank in November, 1829, and went to New-Bedford, where he has since resided; and that Mr. Delafield, the cashier of the bank, knew where he resided. The defendants also produced the affidavits of the president and cashier, and of the attorney and counsel of the bank, that until after the trial of the cause they did not know that the deponent *Russell* knew at *what time* on Saturday the 30th day of May, 1829, the bill in question was left at the bank, nor that he knew that it was handed to Davis, nor that he knew any fact or circumstance which was any way important to the defendants in their defence, and that they verily believed that all the other officers and directors of the bank were equally uninformed until after the trial of the cause as to the evidence which could be given by Russell in those particulars. The superior court granted a new trial, and an application is now made to this court for a mandamus, commanding that court to vacate the rule granting the new trial. The question was submitted on written arguments.

*C. C. King*, for the relator, insisted that a new trial ought not to have been granted: 1st. Because the defendant had not used due diligence in ascertaining whether *Russell* was a material witness, and if so, in obtaining his testimony; that a new trial will not be granted to a party if *laches* are imputable to him, or if it appear that with reasonable diligence the alleged newly discovered testimony might have been procured before the trial. 18 *Johns. R.* 489. 2 *Caines,* 156. 3 *id.* 182, 186, 307. 15 *Johns. R.* 296. From the peculiar duties assigned to Russell, whilst acting as a clerk in the bank, the defendants must have known that his evidence would have been material on the only point on which they

rested their defence; his residence was known, and his testimony not obtained; they therefore were guilty of *laches* which ought to have prevented a new trial; and 2. Because the newly discovered evidence of Russell consists merely of cumulative facts and circumstances relative to the *same matter* controverted on the trial, 'and if allowed would have a tendency to impeach the evidence given on the part of the plaintiff. A new trial will not be granted merely for the discovery of or to let in cumulative facts and circumstances relating to the same matter, which was a principal subject of controversy on the former trial. 15 *Johns. R.* 210. 8 *id.* 84. 5 *Cowen,* 207. Nor to admit the testimony of *another witness* to the same fact. 2 *Caines,* 129, 133. 8 *Johns. R.* 84. Nor to introduce evidence to impeach the testimony given, 1 *Caines,* 24, 4 *Johns. R.* 425, 5 *id.* 248, 3 *id.* 255, except in cases relating to the identity of soldiers in actions relative to the title to lands in the military tract. 14 *Johns, R.* 186. 5 *Cowen,* 207. The evidence of Russell does not establish any new fact, or vary the ground of defence; its tendency is to impeach the testimony on the part of the plaintiff, and to sustain or corroborate that on the part of the defendants as to the time of the deposit of the note.

*D. S. Jones,* contra. *Laches* are not imputable to the defendants below in not ascertaining the testimony which could be given by Russell, and obtaining his evidence, because they could not know that the cause would turn as it eventually did, upon the time of day when the draft in question was deposited in the bank. They went to trial prepared to shew that by the usage of the Phœnix Bank, and of all the other banks in the city, supported by repeated adjudications, they had used due diligence in forwarding the draft. But if, as a general principle, a new trial on the ground of newly discovered evidence will not be granted where a party has been guilty of *laches,* a court has the right, and ought to exercise it, of granting a new trial, if they are satisfied that such laches arose from misapprehension, or if they believe that a new trial will tend to elucidate doubtful facts and subserve the cause.

ALBANY,
Nov. 1830.

The People
v.
Superior Court
of New-York.

As a general rule, it is admitted a new trial will not be granted merely to admit cumulative facts and circumstances, as is decided in *Pike* v. *Evans*, 15 *Johns. R.* 210, and in *Smith* v. *Brush*, 8 *Johns. R.* 84. In the latter case, however, the court explain its meaning by saying that " new trials would be endless if every additional circumstance bearing on the fact in litigation was a cause for a new trial;" and in the case of *Stienbach* v. *Columbian Ins. Co.* 2 *Caines,* 129, they say that cases may occur in which, if doubt exists as to the first decision, it may be proper, upon the discovery of further witnesses *even to the same fact,* to open the cause for a second discussion. The evidence sought to be introduced here is not of facts and circumstances partially aiding the defence, but positive testimony upon the precise question in issue, and if true, conclusive ; and surely doubt must exist in this case as to the correctness of the first decision.

A new trial will not be granted, on the ground of newly discovered evidence, to enable the party asking it to impeach the character or credit of a witness who testified on the former trial, nor to impeach his testimony by shewing it inconsistent with previous declarations, or that he had testified untruly in some incidental point ; but it will be granted to introduce further witnesses. 2 *Caines,* 129.

But if the court erred in granting a new trial, it is contended that as the granting of a new trial is a matter purely *in the discretion of the court* before which the first trial takes place, it is not competent for this court to control that discretion, or to direct the exercise of it *in the inferior tribunal.* Neither the king's bench in England, nor this court, have ever in a solitary instance sustained an application similar *to* the one now under consideration ; and it is believed that no case can be cited, or even *dictum* referred to establishing or asserting the position that a superior tribunal has the right to control an inferior court, possessing the power to grant new trials, in the exercise of their discretion of granting or refusing a new trial. The principle has been uniformly recognized that this court will not interfere with inferior jurisdictions, where a discretion is vested in such jurisdictions and has been exercised by them. 1 *Cowen,* 417. 2 *id.* 479.

3 *id.* 59.    6 *id.* 392.    7 *id.* 363.    1 *Wendell,* 297.    It is true in the case in 2 *Cowen,* the court say that in *extreme cases* they might interfere and control the court below upon questions of fact, presented in the form of a motion for a new trial, but they add, that it is a remedy which should be used sparingly.    This court has uniformly refused to interfere by mandamus to control or coerce the discretion of a subordinate tribunal, 1 *Wendell,* 297, but has never disclaimed the *right* to do so; in England, however, the court of king's bench has placed its refusal of a mandamus to compel a court of inferior jurisdiction to grant a new trial on the ground of want of authority, *Ex parte Morgan,* 2 *Chitty's R.* 250.    In that case a motion was made for a mandamus commanding the judge of an inferior court of competent jurisdiction to award a new trial on the ground that gross injustice was done to the party; but the court refused to interfere, and the motion was denied.

*King,* in reply.    This court have the power to control an inferior court in the granting or refusing of a new trial, and such is the doctrine held in 2 *Cowen,* 479.    And although it is admitted that in ordinary cases the court will not interfere by mandamus to control or coerce the *mere discretion* of a subordinate tribunal, it is insisted that the granting of new trials is not *in all cases* a matter purely in the discretion of the court before which a former trial has been had.    In the case of an application on the alleged ground of a verdict against evidence, the granting or refusing of a new trial would in general be left to the discretion of the inferior court; so also where the application was founded upon an alleged misdirection of the judge, the superior court would not interfere, and particularly so as the party would have his remedy by exception : but where there has been a fair and full trial of every controverted fact, without the complaint of surprize or that the verdict is against evidence, this court will supervise the doings of the inferior court if they grant a new trial; for the granting of a new trial in such case is not a matter purely within the discretion of the inferior court.    The cases cited on the other side in which this court have refused to in-

terfere by mandamus, were cases relating to the practice of the inferior courts or to matters resting in mere discretion, uncontrolled by established principles of law ; in the case now under consideration the subordinate court have erred in the application of principles of law, and have violated the legal rights of the plaintiff by granting a new trial in contravention of such principles established in wisdom and sound policy.

*By the Court,* SUTHERLAND, J. This is an application for a mandamus to the superior court of the city of New-York, commanding them to vacate a rule granting a new trial in this case on the ground of newly discovered evidence. In support of the application it is alleged, 1. That the affidavits shew that the defendants were guilty of gross negligence in not ascertaining, previous to the former trial, that Russell, the witness whom they now wish to use, was a material witness for them ; and 2. That the newly discovered evidence of Russell consist merely of cumulative facts and circumstances relative to the same point or matter which was controverted upon the first trial.

It is a well established rule of this court that a new trial will not be granted on the ground of newly discovered evidence, if it appears that the evidence might, with reasonable attention and diligence, have been procured before the first trial, however material it may be to the party. *Williams* v. *Baldwin,* 18 *Johns. R.* 489. 2 *Caines* 163, *opinion of Thompson, J.* 3 *Caines,* 186, *opinion of Spencer, J.* And it is equally well settled that a new trial will not be granted where the newly discovered evidence consists merely of additional or cumulative facts and circumstances relating to the same matter or point which was principally controverted upon the former trial. *Steinbach* v. *The Columbian Ins. Co.* 2 *Caines,* 132. *Smith* v. *Brush,* 8 *Johns. R.* 86. *Pike* v. *Evans,* 15 *id.* 212. The preservation and observance of these rules are obviously of great practical importance in the administration of justice. It is well observed, in the cases referred to, that it is the duty of parties to come to trial prepared upon the principal point, and that new trials would be endless if every

additional circumstance bearing on the fact in controversy, or the discovery of an additional witness, was a cause for a new trial. Such a practice would not only occasion great delay, but would offer strong temptations to the subornation and commission of perjury.

Cases sometimes arise in which it is difficult to determine whether the newly discovered evidence is strictly cumulative or not; but where it is clearly of that character, consisting of additional witnesses to the same facts testified to on the former trial, or of additional facts and circumstances tending to establish the principal point controverted before, it has uniformly been held, not only in this state but in England, that it is no ground for granting a new trial. An exception to this rule has been made in this state in relation to trials investigating the title to lands in our *military tract*, founded upon consideration peculiar to that class of cases. 14 *Johns. R.* 186. 5 *Cowen* 207. But with that exception, the rule is believed to be universal.

It appears to me, from the affidavits produced, that the plaintiffs were guilty of great negligence in not procuring the *testimony of Russell*, (which is the newly discovered evidence,) upon the former trial, and also that it is merely cumulative evidence in the strictest sense of the term; and that upon either ground, if it had been an application in this court, the motion for a new trial would have been refused.

But it is contended that admitting the court below to have erred in granting a new trial, still that the granting or refusal of a new trial is a matter of discretion, not depending upon any fixed and established rules of law; and it is not competent for this court to interfere with or control inferior jurisdictions in this department of their functions.

It is undoubtedly a well established principle, and has been frequently recognized and expressly decided in this court, that where a discretion is vested in an inferior tribunal, and that discretion has been exercised, a mandamus will not be granted. A mandamus is proper only where some legal right has been refused or violated, and there is no other appropriate legal remedy. *Bacon's Abr. Mandamus,* 527. 3 *Black. Comm.* 110. 3 *Burr.* 1265. 2 *Strange,* 881. *The People*

v. *The Supervisors of Albany*, 12, *Johns. R.* 414. 14 *East*, 395. 15 *id.* 117. *Hull* v. *Supervisors of Oneida*, 19 *Johns. R.* 260. *Ex parte Nelson* 1 *Cowen*, 423. 2 *Cowen* 479. 3 *id.* 59. 6 *id.* 392. 7 *id.* 363. 1 *Wendell*, 297. What is meant by the court when they speak of the *discretion of inferior tribunals*, and say that they will not interfere with or attempt to coerce it, will be best ascertained by adverting to some of the cases in which that language has been used.

In the case of *The People, ex rel. Wilson*, v. *The Supervisors of Albany*, 12 *Johns. R.* 414, the relator Wilson was a constable, and in that character had removed certain paupers from the city of Albany to the adjoining towns; for which services he presented an account of $102 to the supervisors. They examined the account, and allowed $28 thereof, and disallowed the rest, on the ground that it was extravagant and unreasonable. The court refused an application for a mandamus to the supervisors, on the ground that the constable had no legal right to any particular sum, the act under which the services were performed having declared that he should be paid such sum as the supervisors of the county *should judge reasonable;* and it is asked, if a mandamus should be granted, what would be its command ? certainly not to allow any specific sum ; that would be assuming a discretion which the legislature have vested in the supervisors. We could only command them to examine the account, and, in the language of the statute, allow such sum as they should judge reasonable. This they have already done.

In *Giles' case*, 2 *Strange*, 881, a mandamus was asked to certain justices to grant him a licence to keep an ale house. The court refused it on the ground that the justices had a discretion to grant or refuse a licence to whom they pleased, and observed that such an application was never made before. *Salk.* 45. 1 *Burr*, 556.

In *Ex parte Baron & Lyon*, 6 *Cowen*, 392, the court below had set aside a regular default, and let the defendant in to plead on payment of costs. The plaintiff moved this court for a mandamus to the common pleas to vacate that rule. It is observed that the common pleas must be their own judges, upon the circumstances before them, whether they will

set aside a default. *The granting or refusing of such an application is governed by no fixed principles.* No positive rule of law has been violated by the court below, nor can we fix bounds to their discretion upon the subject.

In *Ex parte Benson*, 7 *Cowen* 363, a motion had been made against the relator in the court below and taken by default, his attorney being absent. The court refused to open the default, and an application was made to this court for a mandamus. The mandamus was refused, on the ground that it was a mere matter of discretion with the court whetheer they would open the rule or not; that so far as the rules of practice in inferior courts rest in discretion and violate no rules of law, we would not interfere with them.

In *Ex parte Baily* 2 *Cowen*, 479, a motion was made in the court below for a new trial on various grounds, and among others that the verdict of the jury was against the weight of evidence. The motion was refused, and upon an application for a mandamus, this court observe, that though in extreme cases we might interfere, and control inferior courts upon questions of fact, presented in the from of a motion for a new trial, yet it is a remedy which should be used very sparingly. A contrary course would draw before this court an examination of those questions which address themselves merely to the discretion of the inferior court. We should be perpetually appealed to for the adjustment of rights undefined by law. This would result in an endless conflict of opinion upon questions, which must from their very nature be finally determined by the court below, because they cannot be reached by the rules of law; and although we may think the inferior court erred, yet we will not interfere. Extreme cases may be supposed, which form exceptions to this doctrine; as where an action is brought on a promissory note, the execution of which is proved beyond all doubt, and yet the jury find against it, should the court below refuse a new trial, we might interfere: but in ordinary cases it would be improper; for even where a verdict is plainly against law, yet a new trial may in many cases properly be denied, as if the controversy be very trifling in its nature or insignificant in amount.

ALBANY,
Nov. 1830.

The People
v.
Superior Court
of New-York.

These cases sufficiently indicate the nature of the discretion, the exercise of which by inferior tribunals or officers this court will not undertake to regulate or coerce. It is that discretion which is not and cannot be governed by any fixed principles or rules. We will not set up our judgment in opposition to the judgment of a board of supervisors, as to what is a reasonable compensation for services performed by a constable for the public, no sum having been fixed by law. It is their judgment and discretion, and not ours, to which the legislature have left the decision of that matter. But if they refuse to allow *any thing*, either on the ground that they have no discretion upon the subject, or that the officer has no right to compensation, then we will interfere and determine whether they have the power to make an allowance, or whether the officer is entitled to be paid. The powers of the supervisors and the rights of the officer are questions of law. They are legal powers and rights, if they exist at all. *Bright* v. *Supervisors of Chenango,* 18 *Johns. R.* 242. 19 *Johns. R.* 260. We will not direct the town officers to grant a licence to A., or to refuse it to B.; because neither A. nor B. have any legal right to a licence. The officers have a right to grant or refuse it to whom they please. We will not interfere with that portion of the practice of inferior courts which does not depend upon established principles, or is not regulated by fixed rules. We will not compel them to open, or prohibit them from opening a default upon the usual terms, as a general rule; because such applications are founded upon special circumstances, which may impress different individuals or courts very differently. There is no fixed standard by which we can say in such case the inferior court has erred. We may think so, but that is not sufficient. But if an inferior court should deny to a party the benefit of an established general rule of practice, not depending at all upon circumstances, I apprehend we should interfere. For instance, if it was a rule of such court that the first default should in all cases, as a matter of course, be opened upon the payment of the taxable costs, and they should in a given case refuse to open such default, we should undoubtedly not only have the right, but should be bound to compel them to do it by mandamus. Yet, although it might

. ALBANY,
Nov. 1830.
∿∿∿
The People
v.
Superior Court
of New-York.

rest entirely in their discretion whether they would retain the rule or not, still, as long as it was retained, it would be binding upon them. It conferred legal rights upon their suitors, which they had no power to withhold from them. They would have parted with their discretion, and substituted in its place a clear and well defined rule; and the usage of courts may confer rights upon parties, and impose obligations upon themselves as sacred and imperative as written rules. The only difference is in the evidence of their existence. No court has a right arbitrarily to change its established course of proceedings in relation to a particular case.

Applications for new trials on the ground that the verdict is against evidence, are in general addressed to the discretion of the court. There is no standard by which the weight of *conflicting evidence* can be ascertained. Different courts and juries and individuals would entertain different opinions upon the subject, and each must judge for themselves. But where the evidence is all upon one side, and clear and satisfactory, it ceases to be a matter of discretion; there is no room for difference of opinion; and it would be an abuse, not an exercise of discretion, to refuse a new trial; and we might, and I think ought to interfere. Where the discretion of a court is spoken of, a sound legal discretion is meant, not an arbitrary *sic volo.* The case *Ex parte Morgan,* 2 *Chitty's R.* 250, as stated by the counsel in opposition to this motion, is in perfect harmony with the current of decisions in this court. The court of king's bench refused to interfere by mandamus to compel an inferior court to grant a new trial. The facts of the case are not stated. But the court say, among other things, that they cannot interfere to *regulate the practice* of every inferior court, because every inferior court is the proper judge of its own practice. It must undoubtedly be a very extraordinary case in which a mandamus would be issued to compel an inferior court to grant a new trial. The general language of the court must be taken in connection with the case in which it is used.

These observations are equally applicable *to motions for* new trials founded on newly discovered evidence. It has been shewn that there are certain principles in relation to

such applications, which are clearly settled and well defined by long continued practice and an uninterrupted series of decisions in our own and other courts. Those principles are, 1. That a party is bound and presumed to know the general leading points which will be litigated in his case ; 2. That if he omits to procure evidence, which with ordinary diligence he might have procured, in relation to those points, upon the first trial, his motion for a new trial for the purpose of introducing such testimony shall be denied ; 3. If the newly discovered evidence consist merely of additional facts and circumstances *going to establish the same points which were principally controverted before, or of additional witnesses to the same facts and circumstances, such evidence is cumulative,* and a new trial shall not be granted.

In cases to which these principles clearly and unquestionably apply, the granting or refusal of a new trial is not a matter of discretion. The parties have a legal right to a decision conformable to those principles. Where there is doubt upon the point of negligence, or as to the character of the evidence, or as to its materiality, it becomes a matter of discretion, and the court will not, perhaps I ought to say, can not rightfully interfere.

But no such doubts exist in this case. It appears to us that the plaintiffs were guilty of gross negligence in not procuring the testimony of Russell upon the former trial, and also that his evidence, as disclosed in the affidavits, is clearly and exclusively cumulative. It goes to the precise point which was litigated before, and merely corroborates the plaintiffs' former witnesses by a repetition of their testimony, with few additional facts and circumstances. We think it, therefore, a proper case for a mandamus.

It is very possible that the purposes of justice might be subserved in this individual case by the granting of a new trial ; but general principles, whose operation has been found salutary, and which have grown into authority under the sanction of repeated decisions and almost immemorial usage, cannot yield to the hardship of particular cases. It is of cardinal importance that the rules and principles which regulate the proceedings and decisions of our courts should be uniform and stable.

The security of the citizen is essentially increased whenever the territory of undefined discretion in any of the departments of our government is circumscribed by the establishment of well defined and clear principles.

The jurisdiction of this court by mandamus is one of immense importance and extent. It belongs to this court alone. It extends to all inferior courts and tribunals, and officers, executive, ministerial, or judicial within the state. It operates summarily, and in some cases definitively, upon most important interests. In view of these considerations, we have taken this occasion to explain somewhat at large, some of the leading principles which define the extent and regulate the exercise of this power, so far as they seemed to be applicable to the case before us.