No. 59.—John S. Manor, *et al.* Justices of the Inferior Court of Scriven county, plaintiffs in error, *vs.* Moses N. McCall, *et al.* Commissioners, defendants.

In 1847, the Legislature passed an act " to establish and make permanent the new county site" of Scriven county, " to provide for building a Court-House, &c." and " to appoint commissioners to *carry the same into effect, and to provide for the payment of the necessary expenses.*" By the 5th section, the Justices of the Inferior Court were required to levy an extra tax, to pay the expenses.

[1.] *Held,* That the commissioners appointed had such an interest as would authorize them to apply for a mandamus, to be directed to the Inferior Court, on their refusal to levy the tax.

[2.] The Superior Court will not control the *discretion* of the Inferior Court, where it cannot be governed by some fixed principles or rule, unless in case of an arbitrary abuse of it.

[3.] 'But when the law imposes a specific duty, a mandamus will be awarded against the subordinate Court, to compel its performance.

Application for Mandamus, before Judge Holt, in Scriven county·

The Legislature of Georgia, in 1847, by an Act, fixed the county site of Scriven county, at Sylvania, and appointed the relators, plaintiffs in error. commissioners to lay out the town, sell the lots, and sell the old Court-House and lots at Jacksonboro," and " for the purpose of contracting for, and having built, a Court-House and jail, at the new county site." The proceeds of these sales were to be applied to the building of the new Court-House and Jail.

The 5th section of the Act reads as follows : " That the Justices of the Inferior Court of Scriven county, shall, on the second Monday in January, or at any time thereafter, before the first of May, 1848, levy an extraordinary tax, *not exceeding* fifty per cent. on the State tax, for the purpose of paying the expenses already necessarily incurred by said commissioners, in and about defining the centre of said county, for the purchase of said land, and for advertising in the public gazettes, as also for the purpose of paying for the building of a Court-House and jail, at the new county site."

An application was made to the Judge of the Superior Court of Scriven county, in behalf of the commissioners, setting out that they had laid out and sold the lots, at the new site, and old Court-House, and had contracted for the building of a new Court-House, and the removal of the old jail. That they had in hand the sum of $972 75; that there would be a balance to be raised by taxation, of $1162 62, and that it would require a tax of 50 per cent. on the State tax, to pay this amount, and praying an alternative mandamus, to be directed to the Justices of the Inferior Court, requiring them to show cause why they should not levy a tax of *fifty* per cent. upon the State tax, "for the purpose of paying the expenses already necessarily incurred by the said commissioners, &c."

The Justices, in return to the alternative mandamus, showed for cause, that the relators (the commissioners) had no interest under the Act, being mere officers under the act, and could not receive any portion of the tax, if raised, and therefore could not apply for a mandamus. That it did not appear but that *five* per cent. (the amount the Court had already assessed,) would be sufficient to be levied for the present year, as the relators did not show what was the contract, nor when it was to be paid.

They farther showed that they had, according to their discretion and judgment, performed the duty required of them, by levying a tax of *five* per cent. And that, under the said act, the discretion of fixing the amount of taxes to be levied, (so it does not exceed fifty per cent.) belongs exclusively to the Justices of the Inferior Court, and cannot be controlled by mandamus.

And further, that the time within which the taxes were to be levied had passed, and they had no authority to levy the tax if they were disposed so to do.

The Judge, after hearing argument, on 12th June, 1848, overruled the several grounds, and ordered a peremptory mandamus to issue.

To which decision the Justices, by their counsel, excepted, and have alleged the same to be erroneous; because—

1st. The relators have no legal right.

2d. If they have, the Justices had a discretion, and having exercised it, it cannot be controlled by mandamus.

The third ground, as to the time having passed, within which the law authorized the tax to be levied, was abandoned before this Court.

M. Marsh, for plaintiff in error, contended—

1st. That the relators had no legal right or interest in the matter, and cited, *Hodgson vs. Dexter*, 1 *Cranch*, 345. *Ghent vs. Adams*, 2 *Kelly*, 214. *Cleveland vs. Stewart*, 3 *Kelly*, 297. *Ex parte, Nelson*, 1 *Cowen*, 423. 8 *East*, 219. *Mayor, &c. vs. Green*, 4 *Ga. Rep.* 26. *The State vs. The Justices of Moore*, 2 *Iredell*, 430.

2d. If discretionary power is given to a Court, though mandamus will lie to compel them to act, the Court will not *control their discretion;* and cited, 19 *John.* 259. 12 *Ib.* 414. 7 *Cowen*, 363. 11 *Pick.* 189. *U. S. vs. Lawrence*, 3 *Dall.* 42. 8 *Peters*, 291. 1 *Cowen*, 423. 3 *Ib.* 59. 6 *Ib.* 392. 1 *Ch. Genl. Pr.* 797. *Ang. & Ames*, 580. 5 *Halstead*, 57. 12 *Peters*, 524.

Polhill & Starnes, for defendant, submitted :

1st. It is properly and strictly, a legal right, and not a legal interest, which a party is entitled to have enforced by mandamus.

It is not necessary that a *pecuniary interest* should exist in such case.

All that is necessary is ,a legal right, as to an office of honor or profit, or to academical degrees. 3 *Black. Com.* 110. 15 *East*, 117. 2 *McCord*, 170. *Bac. Abr. ti. Mand.* 12 *John.* 413.

2d. The discretion on the part of an inferior tribunal, which the Courts will not enforce by mandamus, "*is such discretion as is general, and not regulated by fixed principles.*" 5 *Wend. R.* 114. 10 *Wend.* 285. 2 *McCord*, 170.

In illustration, see also, 6 *Cow. R.* 392. 5 *Binn.* 536. *The Queen vs. The Vic. Park Co.* 1 *A. & E. (N. S.)* 544, 545. *The Queen vs. Ledyard, et al.* 1 *A. & E. (N. S.)* 616, 622.

*By the Court.*— Lumpkin, J. delivering the opinion.

There are two questions presented by the record in this case.

1st. Have the relators such legal right in the matter, as to entitle them to the remedy which they seek ?

And 2d. Will the Superior Court control by mandamus, the discretion of the Inferior Court of Scriven county, in the case.

[1.] The first question is readily solved, by reference to the Statute of 1847. (Pamphlet Acts, p. 74.) This Act was passed,

as its title shows, " to establish and make permanent the new county site," " to provide for building a Court-House and county Jail thereon," and " to appoint" *the relators " commissioners, to carry the same into effect, and to provide for the payment of all necessary expenses."* It is apparent, therefore, that the trust .delegated by the Legislature to these agents, extended to the very subject in controversy, to-wit: the providing of the necessary funds for the erection of the new Court-House and Jail, at Sylvania, and that it continued until this object was accomplished; consequently, the relators had such a legal interest in this matter as to authorize them to apply for this only adequate and appropriate remedy to enforce it.

[2.] The doctrine as to *discretion* is well defined, and seems to be this: A Superior Court will not undertake to regulate and control a *discretion* in the inferior judicatory, which is not, and cannot be governed by any fixed principles or rule. *The People vs. the Superior Court of New York,* 5 *Wend.* 114. For instance, if the law creates an office, and directs the Inferior Court to allow to the incumbent, such compensation as they shall judge reasonable and right, the Superior Court would not interfere, unless the discretion conferred in this case was grossly abused. So in the granting of licenses by the Inferior Court, opening roads, &c. So in the granting or refusing of a new trial, on the ground that the verdict was contrary to evidence. In this class of cases, the Inferior Court will be required to act, but it will not be coerced as to the mode or manner of its action.

[3.] But where the law imposes a specific duty, a mandamus will be awarded against the subordinate Court, to compel its performance. *Hull vs. Supervisors of Oneida,* 19 *John.* 259. *The People vs. Superior Court of New York,* 5 *Wend.* 114. *Ex parte Bailey,* 2 *Cowen,* 479. *Bright vs. The Supervisors of Chenango,* 18 *John.* 241. *Commissioners vs. Lynch,* 2 *McCord,* 170. *Shoolbred vs. Corporation of Charleston,* 2 *Bay,* 63. *Commonwealth vs. Johnson,* 2 *Binney,* 275. 2 *Hen. & Mun.* 132. *County of Boone vs. Todd,* 3 *Missouri,* 140. *People vs. The Superior Court,* 10 *Wend.* 285. 18 *Wend.* 534. *Wright,* 353.

It only remains to apply these principles to the case before us. The 5th section of the Act already referred to, provides, " that the Justices of the Inferior Court of Scriven, shall, on he second Monday in January, or at any time thereafter, before the

first Monday in May, 1848, levy an extraordinary tax, not exceeding fifty per cent. on the State tax, for the purpose of paying the expenses already necessarily incurred by the said commissioners, in and about the defining of the centre of said county, for the purchase of said land, and for advertising in the public Gazettes, as also for the purpose of paying for the building of a Court-House and Jail, at the new county site."

The relators submitted a report to the Inferior Court, in April, 1848, by which it appeared, that after applying the proceeds of the public lots at the new county site, and the old Court-House, Jail, and lots at Jacksonboro', amounting to $972 75, it left a deficiency of $1,162 62, which it would be necessary to raise, by an extra-tax, to pay for the new buildings. And we believe that this sum fixed the discretion of the Court. They could not, it is true, exceed fifty per cent. on the State tax. They were bound, however, to execute the power conferred on them by the Legislature to that extent, provided it was necessary to raise the $1,162 62, and the report of the relators shows that the whole was needed. To levy a tax, therefore, of five per cent. only, was an evasion of their duty. The mandate of the law was imperative, and they had no option. And it is no sufficient excuse to say, that the report of the relators failed to show when the money was needed by the contract. The 5th section of the Act peremptorily exacted the imposition of this extra tax, *"on the second Monday in January, or any time thereafter, before the first Monday in May,* 1848." The Act may have been rashly or precipitately passed, still it must be enforced.

The General Assembly has seen fit to take from the Inferior Court, as it had the right to do in this case, its ordinary jurisdiction over these county matters, and confer it on particular individuals. For its proper exercise, these agents of the public *pro hac vice,* are answerable to the State, and to public opinion. See *Commonwealth vs. Johnson,* 2 *Bin.* 279.

The judgment below must therefore be affirmed.