BOLÍVAR PAGÁN, Petitioner, v. HORACE M. TOWNER, GOVERNOR OF PORTO RICO, Respondent.

No. 236. Argued November 16, 1925.—Decided February 3, 1926.

*Bolívar Pagán* for the petitioner. *George C. Butte, Attorney General,* and *C. Llauger Díaz* for the respondent.

MR. JUSTICE ALDREY delivered the opinion of the court.

The petitioner prays this court to issue a writ of mandamus commanding the Governor of Porto Rico to appoint him a member of the Insular Board of Elections, alleging in substance the following: That he is more than twenty-one years of age, a citizen of Porto Rico and a resident of this city; that the Insular Board of Elections is a permanent body composed of three members appointed by the Governor of Porto Rico, two of them on the recommendation of the central directive organizations of the two principal political

1

parties of the Island; that the number of votes cast in the last general election of November, 1924, by the Socialist Party for its candidate as Commissioner to the United States converted it into one. of the two principal political parties and deprived the Porto Rican Republican Party of that character, for which reason the position which the representative of the latter party occupied in the Insular Board of Elections is vacant; that after the result of the election was known the central directive organization of the Socialist Party recommended the petitioner to the Governor for appointment as member of the Insular Board of Elections to represent the said party, and that the Governor has refused to appoint him to that office, giving no reasons for his refusal referring to any objection to the candidate recommended or against his legal, intellectual, moral or physical conditions.

Without issuing the writ prayed for this court summoned the parties for a hearing on the merits of the petition, and the respondent pleaded at the said hearing that the petition did not state facts sufficient to justify the granting of the relief prayed for, whereupon the court allowed the parties time for filing briefs on that question. Consequently, in view of the demurrer interposed by the respondent, the question at issue is whether the facts alleged by the petitioner, if taken as true, are sufficient to justify an order of this court that the Governor appoint him to the said office.

For the issuance of a writ of mandamus it is necessary that the person against whom it is directed have a ministerial duty imposed by law to perform the act demanded of him, for if such is not the case and it is within his discretion to perform the act or to choose the manner of performing it, the writ of mandamus should not be issued, as held in the cases of *Zavala* v. *Executive Council,* 9 P.R.R. 191, and *Negrón* v. *Supervisor of. Elections,* 11 P.R.R. 352. For this reason it is well to leave established, as said in 18 Ruling Case Law, 116, and in 38 Corpus Juris, 598, that it

is frequently and universally recognized that mandamus only lies to enforce a ministerial act or duty; that in this sense a ministerial duty may be defined briefly to be some duty imposed expressly by law involving no discretion in its exercise, but mandatory and imperative; that the distinction between merely ministerial and judicial and other official acts is that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial. We also desire to say that in order that a writ of mandamus may issue there must be a clear legal right to compel the performance of the act or duty demanded (38 Corpus Juris, 582), for although a conditional writ may issue, it must command the respondent to perform the act, unless he show sufficient reasons for not doing so. This is why the right claimed must be clear, since the issuance of the writ means that the court understands that the petitioner has the right asserted and that the respondent has a ministerial duty to perform the act as ordered, unless he show sufficient reasons for his refusal to perform it.

This being understood, we shall inquire whether the facts alleged in the petition in this case are sufficient upon which to hold that the writ of mandamus should issue.

The law provides for a permanent Insular Board of Elections composed of three members, two of whom shall be representatives of the two principal political parties in Porto Rico and shall be appointed by the Governor on the recommendations of the central governing boards of the respective principal political parties, wherefore the main question involved in this case is whether, assuming that the Socialist Party became one of the two principal political parties after the last election, as alleged in the petition, and recommended the petitioner to represent it on the said

board, the Governor has a ministerial duty to appoint the only candidate proposed, or whether that duty is discretional.

Although the petitioner contends that because he was proposed by the Socialist Party the Governor has the ministerial duty to appoint him, yet he does not seem to be sure of his ground, for in alleging that none of the reasons given by the Governor for refusing to appoint him refer to his legal, physical, moral or intellectual conditions he tacitly admits that if some of these reasons existed the Governor would not be obliged to appoint him. And that is a fact, for the only limitation imposed by the law on the Governor is that the person appointed should be proposed by the corresponding party, and we can not believe that the intention of the Legislature was that the Governor must authorize by his signature the appointment of any person proposed to form a part of the official Insular Board of Elections, whatever might be the legal, moral, physical, intellectual or other conditions of the person proposed. And from that allegation it may be deduced also that the Governor refused to make the appointment because of some objection distinct from those stated in the petition and not mentioned therein which may have been sufficient for his refusal.

In giving the two principal political parties the right to have representatives on the Insular Board of Elections appointed by the Governor the law empowered those parties to propose their candidates, but not to appoint them, and if the theory of the petitioner is correct the Governor would not make the appointments, but they would be made by the political parties and the Governor would become an automaton whose sole province in this case would be to sign the appointments of the persons proposed by the political parties. When the law has intended to give to the political parties the right to appoint their representatives for official duties it has done so expressly, as in providing that each one of the two principal parties should name one person of the three who

form the local board of elections in each municipality. Section 13 of Act No. 79 of 1919, amended in 1923 (p. 562) and 1924 (p. 4).

For the Insular Board of Elections the law did not give to the two principal political parties the right to name the persons to represent them thereon, but only the right to propose their candidates to the Governor for his appointment. To propose, according to the Dictionary of the Spanish Academy, is "to state a thing with reasons for the knowledge of another or to induce him to adopt it; to consult or present a person for an employment or benefit." The words "*a propuesta*" used in the Spanish text of the Act are rendered in the English text "on recommendation," which is even more explicit and clear in its meaning, for which reason the political parties have only the right to propose or recommend their candidates, a right which reciprocally gives the Governor the right not to accept the proposal or recommendation and therefore the right of not being compelled to accept and appoint necessarily the persons recommended and of requesting the central governing boards of the parties to recommend other persons who in their judgment may be appointed by him. The power to appoint on the proposal or recommendation of another involves in itself the discretion to appoint or not the person proposed or recommended. Clearly that power, which is recognized in the Governor in this case, is to be exercised within reasonable limits, and if it is abused mandamus will lie. For instance, the Governor, as we have said, could not appoint any person not recommended by the party and must select a name from among those proposed, if there be no valid reason for rejecting all of them. From the petition in this case it does not appear that the Governor abused his discretion in failing to appoint the petitioner.

The other grounds of the respondent's opposition to the

petition are secondary to that considered and for that reason we do not discuss them.

In the case of *Piovanetti* v. *Paz et al.*, 28 P.R.R. 498, cited with approval in the case of *Torres* v. *Municipal Assembly of Guánica*, 33 P.R.R. 337, we held that according to the law then in force the municipal assemblies were obliged to fill such vacancies as might occur in them with persons recommended by the local directing organization of the party which elected the member whose vacant place was to be filled, and that they could not ask that more than one person be recommended, for they had no right to select; but the decision is not applicable to the present case because, as we then said, the election of the person who was to represent therein the minority party could not be left to the will of the opposite party, while in the present case it is not the adverse party which, with its ideas and interests contrary to the other, must make the appointment, but the Governor of Porto Rico, in whom we can not suppose such interests.

For the foregoing reasons the petition for a writ of mandamus should be denied.

Mr. Justice Franco Soto dissented.

### DISSENTING OPINION OF MR. JUSTICE FRANCO SOTO.

I can not concur with the majority who refuse to issue an alternative writ of mandamus and thus avoid a discussion of the merits of the case. I consider the petition sufficient, unless in no case is it permitted to issue a writ of mandamus against the Governor. This was decided affirmatively in the cases of *Lutz* v. *Post*, 14 P.R.R. 830, and *Jiménez* v. *Reily*, 30 P.R.R. 582. Likewise no attention would have to be given to the right asserted by the petitioner if the Legislature had no purpose in enacting the section of the election law whose enforcement is prayed for, but intended its fulfillment to be a personal or voluntary act of the respondent. If this were so, why enact laws of such a nature?

The section to which I refer is section 1 of the Election and Registration Law, as amended on June 18, 1924, and it reads in part as follows:

"A permanent Board of Elections is hereby established, to be composed of a General Supervisor of Elections, as chairman who shall be appointed by the Governor with the advice and consent of the Senate of Porto Rico, and two persons representing the two principal political parties of the Island as hereinafter defined, and a substitute for each such member, who shall be appointed by the Governor on recommendation of the central directing organizations of the said parties; . . ."

Certainly the majority does not put in doubt, for it is a matter of judicial knowledge, that as a result of the election held on November 4, 1924, the Socialist Party became one of the two principal political parties of the Island. And the petitioner, relying on that fundamental fact, alleges that because the Porto Rican Republican Party lost its position as a principal political party and by virtue of "the recommendation" to the Governor of his name by the central directing organization of the Socialist Party he has the right to fill the vacancy left by the representative of the Republican Party in the Insular Board of Elections, and that notwithstanding such recommendation the Governor has refused to make the appointment, the petitioner expressing himself on that point as follows:

"XII.—That the said respondent, Horace M. Towner, Governor of Porto Rico, has refused to appoint the petitioner as a member of the Insular Board of Elections to represent the Socialist Party of Porto Rico as one of the two legally called principal political parties in Porto Rico.

"XIII.—That none of the reasons stated by the respondent Governor for his refusal to appoint the petitioner as indicated refer to any objection to the candidate proposed, or to any objection against the legal, intellectual, moral or physical conditions of the said petitioner."

In my opinion the refusal in the manner stated renders the petition more than sufficient, because it was of itself

enough, if the jurisprudence has value with us, and it is not necessary for the petitioner to anticipate the only reasons on which the respondent's refusal could be based. The general rule, which has been uniformly sustained, that before petitioning for a writ of mandamus a demand should be made upon the respondent and that there must be an express or implied refusal, has no application when the duty sought to be enforced is of a public nature or affects the public at large, and in such cases it is not necessary to allege a demand and refusal. The law imposing the duty stands as a continuous demand. *People* v. *Board of Sup'rs*, 79 N.E. 126. And it can not be said that this doctrine is a novelty in our local jurisprudence. In the case of *Torres* v. *Municipal Assembly of Guánica*, 33 P.R.R. 337, involving precisely a mandamus which peremptorily ordered the said assembly to appoint a socialist member ''on recommendation'' of the directing organization of the Socialist Party, this court expressed itself in the following terms:

''As our discussion of the principal question would tend to show, the selection of a person to represent a particular constituency is a matter of high public nature. Therefore, we are satisfied from the citations of the petitioner that in matters of such a high public nature a previous demand to perform the act in question is unnecessary.''

If this is so I believe that it is too much to require, after it is alleged in this case that there was a demand by the petitioner and a refusal by the respondent, a further statement of the reasons which would have to be read perhaps out of the respondent's mind. This is impossible.

And it will seem strange, consequently, that compliance with the section that is being construed should be made by this court to depend on certain reservations which are put in the mind of the respondent and which, because of their imaginary effect, might be the same as regards one or a hundred candidates. The mere refusal of the respondent was

enough if his power is recognized to be arbitrary. This is against the consensus of the authorities. The established general doctrine that where the performance of an official duty involves the exercise of judgment or discretion the officer can not be controlled with respect to the particular action that he may take in the matter, has its limits. Jurisprudence establishes an exception for all cases in which the officer or functionary may be guilty of a gross abuse of discretion, or there is a positive evasion of the duty, or he refuses to act at all as required by law, for in these circumstances mandamus would afford relief when there is no other adequate remedy provided by law. 18 R.C.L. 126-7, and cases cited in note 5.

At all events, discretion has its limits, and we can not say without knowing the facts whether those limits have been exceeded when the petitioner alleges, if it were necessary to allege it, that none of the reasons given in support of the Governor's attitude refer to any objection against the legal, moral or physical condition of the petitioner. We can not shield ourselves, under penalty of incurring the same mistake of an excess of discretion which it is sought to correct, by giving to the word "recommendation" a meaning which was not intended by the legislators. The only rational interpretation is that the Legislature expressed its idea that the person recommended, which is equivalent to saying the person elected or selected by the political party entitled to the representative, shall not be appointed outside of the official action of the dominant political parties, but through their official conduct. In a word, it was sought to ordain that the respondent could not act on his own initiative by selecting any individual without the official recommendation or proposal of the political party entitled to representation on the Insular Board of Elections. It was sought to define imperatively that the Governor should not act outside of the official acts of the said parties, and that was the positive intention

of the legislators, as shown by the significance to them of the creation of an organization whose high mission, the preserver of all democracies, is the supervision and direction of elections in Porto Rico. Hence, on examining the authorities, we see that laws of a similar nature have been enacted in other states in response undoubtedly to the fundamental basis of a republican or democratic government. The theory seems very clear. The political parties are the real agencies of the people in whom the sovereignty resides and the government is in turn a mandatary as a result of the electoral struggle for the ruling of the government. If this is so, how is it possible to hold fair and impartial elections if one or another of the dominant political parties is not recognized by due representation on the official organizations having the control of elections?

"The appellant refers to the alleged appointing power of the municipal assembly. The appointing power of the municipal assembly to fill vacancies is merely ultimate or residuary. The election is primarily in The People and the appointment, we hold, is placed in the party that loses a member in the assembly. By the Constitution of the United States the power of appointment may be placed by Congress in the President or in the heads of departments and we do not doubt that Congress has a right to place such power of appointment elsewhere. Perhaps, originally, political parties were not recognized as legal entities, but history in the United States has shown that political parties are recognized for various purposes as legal entities, even to the point that limitations are put upon their organization. We are clearly of the opinion that the Legislature of Porto Rico had the right to place the filling of a vacancy in a political party, and did so." *Torres* v. *Guánica,* 33 P.R.R. 340.

Therefore, it will not be a surprise to say that American jurisprudence has frequently held that mandamus is a proper remedy to compel performance by officers of their duty with respect to the appointment of managerial officers of an election.

"Thus it has been held that the duty imposed upon a public officer of appointing managerial election officers to be selected from the

several political parties is so far ministerial that a mandate may issue to compel him to appoint a member of one of the parties, where he has arbitrarily refused to appoint any member of such party but has appointed persons all of whom are members of the opposite party.'' 18 R.C.L. 269.

In the case of *Independence League* v. *Edward Taylor,* 154 Cal. 179, the statute had created a board of election commissioners for the management and control of the registration of voters and of the holding of elections in the city and county of San Francisco. The power of appointment was held by the mayor. Two of the five members first appointed were chosen from each of the two political parties obtaining in the city and county the highest number of votes at the last preceding general election. The mayor violated the statute by appointing two persons not members of the party which obtained the highest number of votes, and the opinion of the Supreme Court of California in its conclusion is as follows:

''Upon the conceded facts, as above stated, it does not seem to us to admit of any doubt that it was the imperative duty of the mayor under this provision of the charter to fill the vacancies which occurred in the election commission in January last by appointing members of the Independence League. The terms of the section are so plain and the policy of the provision so obvious that discussion as to the meaning of the first or the vital importance of the latter would be superfluous. The functions of the board with regard to the whole series of acts from the registration of voters till the canvass of their votes are so numerous and important and the necessity of making such a body, armed with such powers, representative of the two leading parties in a Republican or Democratic government is so universally recognized that no argument is needed to fortify the conclusion that the framers of the charter, and the people who adopted it, intended to deprive the mayor of any discretion to disregard its plain mandate. The policy of the law is to prevent frauds in elections, and not only to secure fairness in their conduct, but to give to the public a practical assurance that they have been fairly conducted and their results honestly declared. The mayor has, and necessarily must have, a discretion in the selection of the individuals to be appointed, but he has no discretion to seek those individuals outside of

the designated class of eligibles. To admit that he has such a discretion, and that such discretion is uncontrolled, is to bring about the very condition which the framers of the charter designed to prevent. Upon the facts presented by the petition and demurrer our conclusion is that the mayor violated the charter in appointing King and Apperson, and that he has neglected and refused to perform an act specially enjoined as a duty resulting from his office in refusing to appoint two members of the Independence League to the places left vacant in January last.

"It seems to be argued that because those places are now occupied by King and Apperson, the court can not order the respondent to appoint others to the same positions. This argument also reduces the charter provision in question to a mere academic declaration of political ethics and deprives the leading political parties of any effective remedy for the violation of the important rights it was intended to secure. If its validity were admitted, the mayor might select the members of the commission from a piece club with perfect impunity so far as the courts are concerned."

The case of *State v. Board of President & Directors St. L. Pub. Schools*, 35 S. W. 617, is also a very interesting case wherein, although recognizing the general rule that mandamus does not lie when there is certain discretion in the performance of the duty defined by law, it was said, however, that it is well settled that if the discretionary power is exercised with manifest injustice, the courts are not precluded from commanding performance of such duty and that an abuse of discretion is controllable by mandamus. And as such was regarded the action of the defendants in appointing in an election precinct judges and clerks who were all members of one political party, these appointments having been definitely set aside and other officers appointed with equal representation from each party. Finally, the Supreme Court of Missouri said:

"Without further discussion, our conclusion is that, in the action taken, the school board so abused the discretion confided to it that it was a virtual refusal to perform the duty of holding an impartial election, and that, in contemplation of law, it has refused to act at all, and it is our duty to disregard its unjust action, and require it by our mandate to proceed in a lawful way to hold said election."

The same course is followed in the cases of *Illinois State Board of Dental Examiners* v. *People,* 13 N.E. 201, 123 Ill. 227; *Village of Glencoe* v. *People,* 78 Ill. 382; *Arberry* v. *Beavers,* 6 Tex. *(loc. cit.)* 472; *Commissioners* v. *Lynch,* 2 McCord, 170; *Supreme Court of New York* v. *Superior Court,* 5 Wend. 114, and *Fretwell* v. *Laffoon,* 77 Mo. 26, cited in the case of *State* v. *Board of President & Directors St. L. Pub. Schools, supra,* it being abundantly and sufficiently sustained that discretion has its limits, especially if the right violated pertains to the public.

If we do not lose sight of these cases and some value be given to them, it must be said frankly that the majority opinion is entirely erroneous. The allegation of the petitioner, the necessity of which I deny, that the Governor refused to make the appointment without giving any reason of a legal, physical, moral, or intellectual character, shows, as is natural, the limit or circle within which the discretion of the Governor may move in making the appointment. It is only on this point that it would be unreasonable to believe that the power to appoint is mechanical or automatic. And it can not be understood how we may deduce from an allegation that expresses the respondent's positive refusal that it "presupposes that the Governor had some objection distinct from those stated in the petition and not mentioned in it." If this were so, the respondent could tell us what the court supposes. Otherwise it would be an irregular way of assuming a defense which we do not know and without investigating its extent, in case of its being arbitrary (limit of the discretion), unless the Legislature gave the Governor the unrestricted power of making the appointment and the courts remained unable to correct or review his action, whatever it might be. But this leads to an absurdity. When the Legislature conferred the power to appoint in the manner shown in this case it should be interpreted necessarily that it was not to be arbitrarily or unjustly exercised, but in behalf of the best

public interests. No matter that only one person was recommended. If the respondent's attitude is a simple refusal, the same might occur with the recommendation of a greater number of persons and any functionary maintaining a situation of passivity could thus easily disregard the law.

On the other hand, the most important case cited by the Attorney General seems to be that of *Jones* v. *Sargent et al.*, 124 N.W. 339, of the Supreme Court of Iowa. In that case, which was a quo warranto proceeding, the strong and heated discussion by the judges, for the decision was given by a majority, was directed principally to the constitutionality of the statute because it imposed on the candidates, aside from their political affiliation, certain qualifications for forming a part of the police commission. The qualifications were that the candidate should be a citizen of the State of Iowa and a resident of the city of Council Bluffs for more than five years next preceding his appointment. However, the Supreme Court seems to ratify the general principle which we have sustained, for in one paragraph of its opinion it said:

"If there were no qualifications upon the duty to select two from the majority and one from the minority party, we might have a different situation. But here there are certain qualifications, and a discretion is vested in the mayor with regard to this very matter."

Finally I will say that the case of *Piovanetti et al.* v. *Paz et al.*, 28 P.R.R. 498, holds in accordance with the general theory of the American cases. A vacancy occurred in the minority party of the Municipal Assembly of Yauco and a single candidate having been recommended by the directing political organization having the right to make the recommendation according to law, the assembly did not make the appointment, but resolved to ask the same political organization to submit the names of three candidates. The resolution was not agreeable to the minority and mandamus proceedings were brought to compel the members of the majority of the assembly to appoint the candidate proposed. The

Legislature uses in section 22 of the Municipal Law of July 31, 1919, the same terminology, ''on recommendation of the directing organization . . .,'' yet the language of this court affirming the judgment below which peremptorily granted the writ of mandamus is as follows:

''The mere statement of the proposition is sufficient to show that the appellants are wrong, for the Municipal Law does not empower them to demand that the minority party should recommend several persons for the purpose of filling a vacancy caused by one of the said minority, but provides that vacancies shall be filled on the recommendation of the committee of the party which elected the member whose vacancy is to be filled. That party is given the privilege of recommending a candidate and, therefore, of selecting the person whom it may deem most suitable; and justly so, for the members of the municipal assembly belonging to the opposite party can not dictate the election of a person to represent therein the minority party, which would be the case if the assembly had the right to ask that more than one person should be proposed.''

I do not believe that any palliative can be given to this language in order to remove its effects in connection with the present case. In my opinion it goes so far that it must be concluded that the members of every assembly were mere figureheads who had only to obey. It was unnecessary for the Legislature to mention them in the law because their function was reduced to zero. However, this case is cited later in that of *Torres* v. *Guánica, supra,* but this latter case set forth an order of ideas that correct the radical impression left by the *Piovanetti Case.* On that account in the *Torres Case,* page 339, it was said: ''When a single recommendation is made, if *Piovanetti* v. *Paz* is correct, and the proposed member is qualified, a duty to name the recommended member arises in the assembly.'' And it is further said on page 341: ''A ministerial legal duty may exist although the person sought to be compelled by mandamus would have to interpret a law or examine a proposed member to see if he had the necessary qualifications.''

The *Torres Case* substantially follows the doctrine of

*People* v. *Board of Sup'rs, supra,* and *People ex rel. Alpuier ct al.* v. *Board of Sup'rs of Kaukakee County.*

"The selection" of candidates by the political directing organization mentioned in those cases, who must be appointed by the organization or functionary having the power to appoint, has the same scope, in my opinion, as the phrase "on recommendation" used in our statute.

Why, then, not continue to uphold principles which up to now seemed invariable? The respondent's position does not matter. An alternative writ of mandamus should have been issued, after which the case should be decided according to the facts and its merits.