"MARTHA BROWN", Petitioner, *v.* "TIMOTHY BROWN",
Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York
County, March 7, 1949.

*John P. McGrath, Corporation Counsel (Mathilda Miller* of
counsel), for petitioner.

*Harry Simon* for respondent.

SICHER, J. There is presented a striking illustration of the
truism that substitution of new counsel does not constitute such
a "material change of circumstances" as to justify modifica-
tion of a support order (under Family Court Rule XVI; Bend-
er's Court Rules, p. 369). In such a situation orderly procedure
requires, as the proper and sole remedy, a formal application
under Family Court Rule XXV (Bender's Court Rules, p. 372),
which provides (insofar as here pertinent): "Motions for rear-
gument or new trial shall be brought on by not less than five (5)
days' written notice, with supporting affidavits, duly served
upon each other party or his or her attorney." To grant such a
request of new counsel on the oral bare representation that he
was not personally present on the original hearing would unduly
encumber already overcrowded calendars.

---

* The opinion as filed sets forth the true names of all parties but as here pub-
lished substitutes fictitious names and disguises certain other details, in con-
sonance with the spirit of section 52 of the Domestic Relations Court Act of the
City of New York (L. 1933, ch. 482).

On the complimentary assumption that I would recall everything that was said on a *pro forma* hearing several months ago at which respondent with a prior attorney and petitioner with Assistant Corporation Counsel Miller attended before me merely for the entry of a consent order for petitioner, there has been referred to me respondent's new attorneys' request for a downward modification of that consent order, which meanwhile had been modified upwards by Mr. Justice STITT on October 8, 1948, according to the following indorsement on the petition under that date: " Respondent only. Probation Officer Devine. Order modified to $18 plus $1 a week on arrears beginning 10/14/48. Notify petitioner."

Of course, I have no such independent recollection and therefore asked that there be furnished transcripts of the minutes of that May 7, 1948, hearing and also of the December 27, 1948, hearing at which the Justice then sitting ruled: " Respondent's application for modification, at request of Corporation Counsel, respectfully referred to Justice SICHER. * * * Well, now, you will have to address all your questions to Judge SICHER."

Transcripts of those minutes will be placed in the probation case file together with this memorandum.

From the May 7, 1948, hearing transcript it appears that Assistant Corporation Counsel Miller in behalf of petitioner and William T. Garvin as then attorney of record for respondent negotiated in conference the terms of a final order of $15 a week while petitioner remained in the same home as respondent and $18 a week after her removal, in lieu of the temporary order of $24 a week previously entered April 2, 1948, by Justice POLIER; that thereupon the parties and those attorneys came before me to state their agreement to that effect and the basis thereof, and I indorsed upon the petition: " Petitioner & Respondent. Corporation Counsel Miller for petitioner. Attorney for respondent. Probation Officer Swell. *On consent* (1) parties will live under same roof, and, petitioner testifies, they have resumed intercourse; (2) respondent will deposit in the court, on means basis, the sum of $15 a week while petitioner continues to sleep and live in the same apartment as respondent (which he has rent-free as superintendent); (3) when and if petitioner moves out of the apartment, the order is to increase to $18 a week; (4) when and if petitioner moves out she is to take with her her clothing, dressing table, bench and desk. (See April 2, 1948 endorsement of Justice POLIER.)"

An examination of that May 7, 1948, transcript shows also that it was stipulated that the parties had gone through a mar-

riage ceremony on November 8, 1942, before a minister; that petitioner was a widow at that time; that it was a second marriage for each party; that there were no children of that marriage; and that, in answer to my question, " Do you have any children, either of you, by the first marriage? " respondent said, " Yes, but not living with me."

From such transcript it further appears no mention was made of any alleged out-of-wedlock children nor any proof offered as to any payments allegedly made for them.  However, inasmuch as there had been mention of out-of-wedlock children at the March 15, 1948, probation bureau intake interview (as set forth in the Chronological Record), any such facts, if relevant, were, or could have been, considered in the negotiations resulting in the stipulated reduction of the temporary order sum of $24 a week to $15 a week, for the wife only; and such negotiations did take, or could have taken, also into account petitioner's disputed claims of respondent's having substantial resources in addition to his current earnings.

Under the circumstances disclosed by such transcripts, the indorsements on the petition, and the Chronological Record, I shall treat the reference to me as an informal application for rehearing (under Family Court Rule XXV), and hereby deny such  application in the light of the well-established doctrines enunciated in the following authorities:

I. The May 7, 1948, consent order embodies a negotiated accord with respect to controverted facts, and therefore it may not be modified except on proof of *intervening* new facts not existing on May 7, 1948.

" Nor does it matter that when the cause was brought on for trial, instead of hearing testimony the court made its decree on the stipulation of the parties.   *   *   *   The fact that the decree now sought to be vacated rests on stipulation does not differentiate it in principle from one where the judgment was rendered after hearing evidence. *The stipulation acted as a substitute for evidence.*" (Emphasis supplied.)  (*Crouse* v. *McVickar,* 207 N. Y. 213, 217, 219.)

" *Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce.* They may stipulate away statutory, and even constitutional rights.   *   *   *   and all such stipulations not unreasonable, not against good morals, or sound public policy, have been and will be enforced ". (Emphasis supplied.) (*Matter of New York, Lackawanna & Western R. R. Co.,* 98 N. Y. 447, 453.)

"A judgment by confession stands in much the same position as one by stipulation or consent and is a conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim." (*Canfield* v. *Harris & Co.*, 252 N. Y. 502, 505. See, also, *Monroe* v. *Monroe*, 52 N. Y. S. 2d 647, 650–651.)

II. Respondent does not bring himself within the prescribed requirements for the granting of a new trial on the ground of newly discovered evidence.

"Motions for a new trial on the ground of newly-discovered evidence are granted only where the evidence could not have been discovered before the trial by the exercise of reasonable diligence, and that fact is made to appear by the moving papers." (*Thompson* v. *Welde*, 27 App. Div. 186, 188.)

"Motions for a new trial upon the ground of newly-discovered evidence are addressed very largely to the discretion of the court. Nevertheless, the freedom of the court to act according to its own judgment must be exercised within the well-established rules controlling such applications. * * * There should be some end to litigation. *The Constitution gives to all litigants their day in court, and a fair and impartial trial, but it does not assure them two days in court.*" (Emphasis supplied.) (*Collins* v. *Central Trust Co. of Rochester*, 226 App. Div. 486, 487, 488.)

"It is very possible that the purposes of justice might be subserved in this individual case by the granting of a new trial; but general principles, whose operation has been found salutary, and which has grown into authority under the sanction of repeated decisions and almost immemorial usage, cannot yield to the hardship of particular cases. It is of cardinal importance that the rules and principles which regulate the proceedings and decisions of our courts should be uniform and stable." (*People ex rel. Oebricks* v. *Superior Court of City of New York*, 5 Wend. 114, 127.)

For all the foregoing reasons, both as matter of law and discretion, respondent's application is hereby in all respects denied, and the October 8, 1948, order is hereby continued, without prejudice to an application, by either party, for modification, pursuant to Family Court Rule XVI, on due proof of intervening material change of circumstances and without prejudice to respondent's right to show upon any violation hearing, under Family Court Rule XV (Bender's Court Rules, p. 369), inability to perform by reason of then existing facts not within his control.

And, of course, no order of this court would be *res judicata* in any plenary action for a divorce, separation or annulment which either party might hereafter institute in the Supreme Court of the State of New York (*Loomis* v. *Loomis*, 288 N. Y. 222).

Notice shall be given to the parties pursuant to the subjoined direction.