### *Joaquim L. Steinbach* v. *The Columbian Insurance Company.*

THIS was an action on a policy of insurance, on
the ship *Catharine*, at and from *Barcelona* to *Balti-
more.* The loss averred to be from arrest and deten-
tion by the *Spanish* government, at *Barcelona.* The
depositions of a Mr. *Benjamin M. Mumford*, ex-
amined on the part of the defendants, and cross-ex-

amined by the plaintiff, were, on the trial, read by the plaintiff. Their contents led to establish a belief, that the voyage actually intended, was direct to the *Havanna*, or some place in the *West-Indies.* They referred, however, to certain papers and documents, prepared by the deponent at *Barcelona*, shortly after the seizure of the *Catharine*, in order to obtain compensation from the *Spanish* government, and in the caption of all these, the voyage was described as for *Baltimore*, and from thence to the *Havanna*,* in order, as stated by the papers, to re-ship at *Baltimore*, and avoid, by this circuitous mode, the danger of confiscation, for going immediately from one belligerent port to another. These papers were lettered, and at the time of *Mumford's* examination, shown to him, and he swore he believed them to be true copies of originals, deposited in the archives of the consular office, in *Barcelona*. In order to explain the manner in which the voyage to the *Havanna* was to be prosecuted, the plaintiff offered these copies, to which the counsel for the defendants objected, that as the depositions were now read by the plaintiff, *Mumford* was his witness, and these papers being only copies, unauthenticated, and adduced with a view of discrediting his testimony, could not be received. This being overruled, a verdict was brought in for the plaintiffs. The present application was to set it aside, and grant a new trial, on account of the admission of the above testimony, and on account of some other witnesses being since discovered, who could further testify to the facts deposed to.

LIVINGSTON, J. delivered the opinion of the court. Several objections are made to the plaintiff's right

Aug. Term, 1804.

* *Murdock* v. *Potts*, was cited. See the observations on that cause. 1 *Lex Mer. Amer.* 320.

of recovering. 1st. It is alleged, that the voyage contemplated while the *Catharine* was at *Barcelona,* was different from the one insured, and that, therefore, the risk never commenced. The insurance being *at* and from *Barcelona,* it may admit of doubt, whether, as the loss happened there, the defendants would not be liable, although a voyage to the *Havanna* were in contemplation. But on this point of law, we give no opinion, because it is sufficiently proved that the vessel was destined for *Baltimore.* Thus have the jury found, nor could their verdict have been different, without disregarding all the testimony in the cause. The defendants themselves are aware that this finding comported with the evidence, and have accordingly directed their principal attack against the testimony itself; for they say, 2d. That *Mumford* was the plaintiff's witness, and, therefore, could not be discredited by him. Whether this gentleman be regarded as the witness of the one or of the other party, is not very material in deciding this cause: he had been examined out of court, at the instance of the defendants, and cross-examined by the plaintiff, who produced his deposition on the trial. Perhaps the best general rule in such cases, would be to consider the witness, if his deposition be read, as belonging to the party on whose application he was examined, without any regard to the person who may finally make use of it. But without deciding this point, we think nothing was done by the plaintiff to discredit *Mumford,* even if he had been his witness. It is not every mistake which a witness may make, when speaking from memory, that will discredit him, and it would be a strange rule indeed,

that a party producing a witness, should not be per-
mitted, even by the witness himself, to correct a mis-
take which he may have committed.    Nothing more
was done here ;  Mumford had sworn, that from cer-
tain papers, the destination of the cargo, according to
his recollection, appeared to be for the Havanna ;
after this, there could be no impropriety in showing
him the papers to which he alluded, or any other to
refresh his memory, and to enable him to correct his
error, if he had made one.    This was no imputation
on his character ; it neither rendered him infamous
nor unworthy of credit, as to the other point to which
he had deposed :  It discovered in the witness a laud-
able promptitude to rectify a mistake, into which an
imperfect recollection had betrayed him, and thus
added to, rather than detracted from, the weight of
his testimony.    3d.  The exhibits B. and C. being
only copies, should not, it is said, have been produc-
ed.    If no allusion had been made to these papers,
by Mumford, they could not have been produced, to
show the real object of this voyage, but he had already
testified that he had made out certain claims against
the Spanish government, for the Catharine and her
cargo, which stated the vessel to be bound directly
for the West-Indies : these papers, he added, were
lodged in the consulate office, at Barcelona.    Having
sworn thus far from memory, the plaintiff had a right
to refresh his recollection, by the showing him copies
of the claims referred to : on inspection, he might
probably be able to determine whether they were
true copies or not, and certainly if he believed them
true, they would furnish better evidence of what the

3 c

Aug. Term,
1804.
originals contained, than any parol account of their contents, which was the only way in which the defendants had attempted to prove them. There is no reason to say, the originals were in the plaintiff's possession. They remained in a public office in *Spain:* and this kind of inferior proof, was rendered proper by the defendants' own conduct. They had not only examined the witness, as to the contents of these papers, but gave the plaintiff every reason to believe, that nothing would be required of him, but proof that the property was *American.* 4th. The abandonment, it is said, was too late. The *Catharine* was seized in *September,* 1800, and not abandoned until fifteen months thereafter. It has already been decided by this court, in *Earl* v. *Shaw,* that an abandonment may be made at any time after the accident, provided, at the date of the abandonment, the loss still continues total. This being the case here, the abandonment was in season. 5th. It is contended that Mr. *Mumford* was mistaken or surprised on his cross-examination, and that, therefore, a new trial should be had. For this purpose, his affidavit is produced, taken nine months after the trial, in which he states, that the captions of the exhibits B. and C. were not shown to him, to the best of his knowledge and belief, and endeavours to explain why they were made as they appear, to wit, to prevent endangering the insurance. This explanation comes too late; a witness under examination may explain and correct himself, but it will be dangerous and improper to receive any elucidation from him, after the trial, and especially after the lapse of so many months; besides, the defendants were apprised of his deposition, long before the trial, and are without excuse, for not calling on

him then, to make such explanations as might be deemed important. 6th. But there has been a discovery of new evidence, and for that reason there should be another trial. It is said, that if a new trial be granted, there are two witnesses who were not known to the defendants at the time of the trial, who can testify as to the destination of the *Catharine.* This was the fact principally controverted on the former trial, and we are now applied to for another, merely because all the witnesses who knew something of the matter, have not been examined.* Every one must perceive the inconvenience and delay which will arise from granting new trials, upon the discovery of new testimony, or other witnesses to the *same* fact. It often happens that neither party knows all the persons who may be acquainted with some of the circumstances relating to the point in controversy: if a suggestion then, of the present kind be listened to, a second, if not a third and a fourth trial, may always be had. There may be many persons yet unknown to the defendants who may be material witnesses in this cause, and this may continue to be the case after a dozen trials; cases may occur in which, if great doubts exist, as to the first decision, it may be proper, on the discovery of further witnesses, even to the same fact, to open the cause

---

* It is no ground for the court to grant a new trial, that a witness called to prove a certain fact, was rejected on a supposed ground of incompetency, where another witness, who was called, established the same fact, and the defence proceeded upon a collateral point, on which the verdict turned. *Edwards* v. *Evans,* 3 *East,* 451.

HARVARD LAW SCHOOL LIBRARY.

for a second discussion : but this is not one of them ; the principal fact here was clearly proved, and if *Lewis* and *Byrnes* had both been examined, it is very uncertain whether the result would not have been the same. 7th. The last reason assigned for a new trial is, that a juror was challenged, in the absence from court, of the defendants' counsel, and in consequence of such challenge did not serve. It appears that the defendants' counsel was in court, when the trial of the cause was moved for and brought on : if he afterwards left it, it was his own fault. In contemplation of law, he was so far present, during the whole trial, that no motion, by the adverse counsel, after he had once appeared, could be regarded as *ex parte*. He had a right to make his challenges to the jurors, without inquiring whether the other counsel was in court or in the hall. On the challenge itself it is unnecessary to decide ; it may well be doubted, however, if it were not a good one to the favour : underwriters can hardly be proper jurors, in cases in which persons pursuing the same business are parties. Jurors should be " *omni exceptione majores.*"

The judgment of the court is, that the defendants take nothing by their motion, and that the rule to show cause why there should not be a new trial, be discharged with costs.

N. B. In another action on the freight of the same vessel, under the same facts, there was a demurrer to the evidence, on which the question was raised, whether a demurrer to evidence confesses all the facts which a jury *might* infer ? But the court avoided a decision on this point, saying there was enough to

warrant the verdict of the jury. SPENCER, J. how- ever, declared he considered the demurrer confessed every thing a jury might infer. That he founded his opinion on the case of *Coksedge* and *Fanshaw*, in *Doug.* 119. and a similar decision in the *Livingston* causes, in our own court of errors.