#### IN THE

## SUPREME COURT

#### OF THE

## STATE OF LOUISIANA.

EASTERN DISTRICT, MAY TERM, 1825.

### CAULKER vs. BANKS.

Whether a cause can be sent before referees, where either party has prayed for a jury, quere?

A judge may refuse to send a cause before referees, altho' it requires the examination of long and intricate accounts.

Power conferred by the terms *it shall be lawful*, need not *necessarily* be exercised.

It is not every error in the decision of questions arising on the trial

APPEAL from the parish court of the parish and city of New-Orleans.

PORTER, J. delivered the opinion of the court.

This case comes up on bills of exceptions, and a correct understanding of them, requires the pleadings to be particularly set forth.

The petition states that the plaintiff and defendant entered into co-partnership, for the purposes of trade, on condition that the former should purchase in Philadelphia and other places, goods, wares, and merchandise, which the latter should sell in New-Orleans. That in pursuance of the agreement, large quanti-

ties of goods were bought by the plaintiff, and forwarded to the defendant, and were by him sold.

That this partnership has been dissolved, and the defendant repeatedly and amicably requested to render a just and true account of the sales of the merchandise, and pay over the balance due the petitioner, but which the defendant has failed to do.

That the defendant has, it is true, rendered to the petitioner, a pretended account of sales, but that the same is false and fraudulent, both as it respects the quantity of goods, and the price at which they were sold.

That the profit really made on the partnership property amounts to $48,089 89, to which the plaintiff is entitled to one half.

The petition concludes by praying the defendant may be decreed to render a true and faithful account of the sales of said goods, wares, and merchandise, and pay over the balance due to the petitioner; and if he fail to pay the same, that he may be condemned to pay the sum above mentioned, with interest and costs; and that the cause may be tried by a jury.

The defendant pleaded the general issue.

East'n. District,
*May* 1825.

CAULKER
*vs.*
BANKS.

of a cause which will induce the supreme court to remand it.

Counsel can make affidavits on any matters relative to the proceedings which the client could.

If a cause be submitted to a jury, on the condition that they may hear testimony on their retirement, but that they shall reduce it to writing; if they fail to write it down, the cause will be remanded.

East'n. District.
*May* 1825.

CAULKER
*vs.*
BANKS.

and that so far from being indebted to the plaintiff, there would be found, on a settlement of accounts, a balance of $5,000 due by him. The answer concludes by a prayer, that he be condemned to pay the sum, with interest and costs.

This answer was filed on the 28th of January; and on the 20th of May, on the cause being called for trial, the defendant moved the court to refer the accounts to three referrees, to be appointed by the court, under the statute of 25th December, 1804, and 10th of April, 1805, it appearing they were long and intricate. The court overruled the motion on the ground that as *fraud* was alleged in the petition, and a jury prayed to try it, the judge could not exercise the discretion which he might do in an ordinary cause. To this opinion the defendant excepted, and its correctness presents the first question for our decision.

The statutes referred to in the bill of exceptions, contain the following provisions.

" That any suit pending at any time in the said court which may in the opinion of the judge require the examination of accounts, or any petition for liquidation of any inheritance or of insolvent debtors praying relief, *may be*

referred to such person, or persons, as the court may appoint, who shall, under its direction state such accounts, or report his, or their opinion thereon to the court." *Acts of the legislative council*, 1804, *p.* 6.

That in all cases which shall appear to the said court to require the investigation of long and intricate accounts *it shall be lawful* for said court to refer the statement to three proper persons to be chosen for that purpose by the court; who shall examine said accounts, and the vouchers and other testimony in support of them, and state such accounts in their report to the court, which referrees, &c., &c. *Acts of the legislative council*, 1805, *p.* 256.

This question, with every other which the cause presents, has been most elaborately discussed. Among other positions which were assumed in argument, it was contended; the authority to send a cause to referees could not be exercised in cases where either party prayed for a jury, because it would be depriving the citizen of the right to the latter mode of trial. Whether there be any thing in the constitution of this state, which prevents the legislature from directing a particular class of cases to be tried by the court with the assis-

tance of referrees, is a point which will be examined when a case arises, where it will be necessary to do so, to settle the rights of the parties before us. As this case was not taken from the jury, all that we have to decide is, the legality of the opinion which refused to refer it.

The first statute declares, cases of the class now under examination, *may be* referred to referrees. The second provides *that it shall be lawful,* for the court to refer accounts to them. The first of these provisions it has been admitted, leaves it discretionary with the court to profit by their assistance, or not. The second however, it has been urged takes away that discretion, and makes it the duty of the court to refer them.

This construction of the statute has been supported, by arguments drawn from a change in the intention of the legislator, evinced by a change in the phraseology of laws passed within such a short interval of time; by public convenience; and by reference to various other statutes in which the words *it shall be lawful* are used as synonimous with " *it shall be the duty.*" &c.

The reasoning drawn from convenience ac-

East'n. District,
*May* 1825.

CAULKER
*vs.*
BANKS.

corded so entirely with our own opinion, that full weight has been given to every other observation by which this construction of the statute has been supported. But even with this aid, the argument has failed to convince us, and the interpretation contended for cannot receive our assent.

It may be true, that in several of our statutes, expressions similar to those found in this, make it the duty of the court on the occurrence of the case contemplated by the law to at once act under it. But as these expressions *ex vi termini* do not make it obligatory, this necessity arises from the nature of the duty imposed, not from the language which confers the authority.— When the thing to be done is permitted only in the mode pointed out by the statute, which declares *it shall be lawful* for the court to do so, a refusal to carry the law into effect would be denying a remedy which the legislature had conferred; hence, the expressions must be understood as leaving no discretion. But when the same thing might have been accomplished in another way, antecedent to the passage of the act, or by distinct provisions of the same law; and an additional authority is conferred to attain the same end, by the terms *it shall be lawful;*

VOL. III. (N. S.) 68

we cannot consider these additional means as exclusive of all others, or as a taking away of those already possessed by the court. In this instance it is not denied, other provisions of the same statute gave the court the power, either by itself, or with a jury, to try the issue joined between the parties. The authority conferred to send it before referees, cannot be considered as taking away that power. It is a different, but not a contrary mode; cumulative with the other, but not inconsistent with it, and either may be resorted to. See the case of *Patterson* v. *Le Farge*, which on principle cannot be distinguished from this, *Vol.* 1, 194.

We conclude therefore on this point that there is not any thing in the act, which makes it compulsory on a judge to abridge his labors, or simplify the facts by referring them to other persons for their report; and that if he will take the trouble to decide on them without the aid which the legislature has thought proper to accord him, there is nothing illegal in his doing so, and that we cannot refuse deciding on facts which reach us through this channel.

We pass to the next bill of exceptions on which reliance has been placed in this court and it is in the following words " On the trial

of this cause, J. Kohn, a witness for the plain-

tiff, was asked, on his cross examination, if a
book now presented to him, and marked D. S.
S. K. was the original book in which entries
were made in the store of Mr. Banks at the se-
veral periods as therein stated, and whether
any of the entries therein, were made in the
hand writing of the witness. This question
was objected to by the plaintiff's counsel, and
overruled by the court, on the ground of its
being an indirect way of forcing in evidence
the books of the defendant.

On what grounds the right to offer this evi-
dence was urged in the court below, the record
furnishes us with no information. To under-
stand those on which it has been sustained
here, it is necessary to recur to the pleadings,
and the testimony drawn from the witness, on
his direct examination.

The petition charges the defendant with
having rendered a false and fraudulent ac-
count, and requires him to give a correct one.

On his direct examination, the witness was
interrogated in regard to the manner the de-
fendant transacted the partnership affairs; and
among other things how the books were kept.
The witness stated that there were a good

East'n. District. many cash sales made; but no cash book kept,
*May* 1825.
that the private goods of defendant were mixed

CAULKER with those of the partnership, and when sold
*vs.*
BANKS. together on a credit, the notes were invariably
taken in the name of the appellant. That in
the account kept of the sales thus made it was
not distinguished which belonged to the firm
or the individual partner, and no account was
kept in any book of the sales made for cash.

The defendant has contended this evidence
goes to fix charges on him of a most serious
kind, and had a tendency to make unfavorable
impressions on the mind of the jury. That
consequently it was within the latitude allowed
on cross examination, to shew the incorrect-
ness of the witness' statement, by producing a
book, the inspection of which would have es-
tablished the accounts to have been kept in a
different manner from that stated by him.

It is difficult to meet this argument fairly,
and give it a satisfactory answer. The defen-
dant had most certainly the right to test the cre-
dibility of the witness in the mode which the
question implies, and considering the matter in
the light in which it was presented in the court
below, we think the interrogatory should have
been permitted to have been put to the wit-

East'n. District.
*May* 1825.

CAULKER
*vs.*
BANKS.

ness. But other considerations mingle with the enquiry here. Supposing the court erred, it does not *necessarily* follow the cause should be sent back for a new trial. A presumption at least should be raised, that in consequence of the error, the decision on the merits was different from what it would otherwise have been.

That presumption has not been raised here. As correctly observed by the court below, the testimony could not have made the book evidence; it was therefore only legal to shake the witness' credit. Now for the latter purpose it was rendered wholly unimportant by a subsequent agreement. This agreement was entered into after the cause had been six weeks under investigation before the jury, and by it the parties agreed to submit the case to eight jurors sworn, upon the testimony already taken and the documents on file; and further, that the jury might send for this witness, and examine him on *any point,* We cannot believe, after such an agreement, reliance was intended to be placed on the want of credit in the witness' veracity, or that the verdict of the jury was in the least affected by the refusal of the court in an early stage of the cause, to permit him to state whether entries in a book presented to him,

East'n. District
May 1825.

CAULKER
vs.
BANKS.

were in his hand writing·     2 *Caines,* 129. 1 *John. case.* 259.

We now come to the last and most important of the exceptions presented, and that is, to the correctness of the decision of the judge *a quo,* in refusing a new trial.   The principal grounds on which it was demanded, were, that all the evidence submitted had not been taken into consideration by the jury, and that the testimony which they had heard in their retirement had not been reduced to writing.

These reasons for a new trial shew how unusual and irregular a course this cause took in the court below.   To understand them, it is necessary to state, that, after the investigation had continued for the period already mentioned, the parties came to the following agreement and affixed their signatures to it.

"We now agree to submit this cause to the eight jurors sworn on the testimony already taken, the books and accounts and all other written testimony on file.   The jury, for further information *on any point,* may, if they please, send for Henry Hutton, Peter M'Alpine, and Joachim Kuhn, but no other witnesses, and they shall attend only if and when, the jury require it.   It is agreed that Mr Caulker furnish

the jury the extract of the letters of Thomas Banks, marked A. and his remarks B. not as evidence, but for the sake of reference to the original letters and accounts to which he objects."

Two of the counsel for the defendant prove, that independent of the stipulations herein contained, it was also agreed on by the parties, and the jury were so informed, that all evidence received by them in their retirement, was to be taken down in writing.

An objection was made to the reading of the affidavits of the counsel, on the ground that they were excluded by an act of the legislature, which positively prohibits them *giving testimony* in any cause.

The contemporaneous exposition of this statute was, that by its provisions, counsel were placed under the same disability as the parties in the suit. The practice in this court, and others, has been to permit them to swear to matters connected with the proceedings previous to trial, and subsequent to it; to get a continuance or to lay the grounds for a new trial. This interpretation of the law has now for the first time been seriously attacked, but after giving much attention to the argument,

we are satisfied of the soundness of the construction, originally given to the statute. The words *giving testimony in a suit,* cannot, in fairness, be extended beyond the meaning attached to the general provision, that a party shall not *testify in his own cause.* A knowledge of the facts indispensable to enable the court to conduct the trial legally, is frequently confined to the attorneys. It cannot be presumed it was the intention of the legislature to exclude the only means through which these facts could be known, and without which the proceedings could not be carried on according to law.

In addition to their evidence it is proved by a witness to whose competency no objection has been made, and whose testimony stands uncontradicted, that the counsel for both parties told the jury on retiring; that the depositions which they might take from the witnesses in their room should be taken in writing by questions and answers; that he gave evidence there, and that it was not reduced to writing.

We consider it therefore, as established beyond doubt, that it made a part of the condition on which the jury was to hear evidence out of the presence of the court, that it should be reduced to writing. Every presumption

belonging to the case fortifies this proof. By

the agreement the parties did not renounce the appeal. It cannot therefore be believed, they did not intend to secure the means of giving effect to a right which they reserved.

This state of things offers a difficulty, which after turning the matter in every way that it has presented itself to our minds, cannot be got over. The laws of this state have secured to suitors in our courts, the right to have their case examined here on the merits. That right can only be forfeited by neglect, or illegality in the mode of bringing the case up; it cannot be lost by accident over which the party had no controul, and in relation to which no misconduct can be attributed to him. Such we take to be the general rule, and one, of the utility and correctness of which, a reasonable doubt cannot exist. We have already acted on it in the case of *Porter* vs. *Dugat*. There the parties agreed the judge might make out the statement after judgment. He lost his notes, and the appellant moved this court to remand the cause for a new trial, in order that the facts might be legally and regularly brought before it. The application was resisted, on the ground that it was not the fault of the ap-

East'n. District,
*May* 1825.

CAULKER
*vs.*
BANKS.

pellee, the cause did not come regularly up; that the consent he gave was for the convenience of his adversary, and every presumption was in favor of the verdict. The court said it was not the fault of the plaintiff, the district judge mislaid his notes, he ought not to suffer from an accident over which he had no controul. *Vol.* 9, 92.

That case was stronger than this, for there perhaps the appellant was not free from fault; as after a verdict against him, it was his interest alone, and of course his duty, to have the case regularly brought up. Here when the agreement was entered into, the verdict was not rendered; it was of course uncertain; and being so, it was equally important to both, to secure the means of guarding against the errors into which the jury might fall.

These means have failed. Without either fault or misconduct of the appellant, he is deprived of a right, which the law has secured him, of having his case examined here. Under such circumstances this court cannot pronounce definitively on his cause. Every precedent we have heretofore established; every principle which it is important to preserve, in relation to the practice in our courts, forbid it.

We *might be* doing the defendant a dreadful injustice in doing so.   We can only delay the plaintiff by adopting the other course.

It is due to the argument at bar, to notice the principal reasons offered against the conclusion just expressed.

First it was contended, the jury were not compelled to take down the evidence, and consequently, it must be presumed the parties intended running the risk of their not doing so.

Admitting the jury were not compelled to take down the evidence; we are of opinion that if they were informed when the cause was surrendered to them, they were to reduce to writing any further evidence they might hear, it was their duty to state whether they intended to comply with this injunction or not.   And that if the appellant mislead by their silence, suffered the examination of the testimony to be withdrawn from the presence of the court and confided to the jury in the confidence they would follow the instructions received, his case is as strong a one for relief, as if it had been their duty to record the evidence.   For he loses his right to appeal without any fault on his part.

Next it was urged, the evidence even if

taken down, could not have been a legal state-
ment of facts, without the subsequent consent
of the parties; and this being known at the
time, the appellant must be presumed to have
left the cause to the jury, subject to this con-
tingency.

We are of opinion that if the jury had taken
down this testimony, the consent of the parties
to their doing so, would have made it such a
statement as this court might have acted on.
We are unable to distinguish this from evi-
dence taken under commission, or facts agreed
on, before, or at the trial.

Lastly, and most seriously, it was urged, that
as soon as the plaintiff discovered the jury had
failed to take down the evidence, he offered
to receive the depositions of the witnesses, as
to what they might have testified in the jury
room; and those of the jurors, in relation to
every thing which had been proved to them
after they left the presence of the court.

This offer was not made until one month and
five days after the verdict had been rendered,
and it cannot be concealed, that such a mode
of getting the evidence was liable to strong ob-
jections. For after the space of time just men-
tioned, how could any one be certain to give

from memory the very same evidence which was delivered to the jury? Under such circumstances, and believing, as we do, that the failure of the jury to take down the evidence, gave the appellant the legal right to have a new trial; we are unable to say this right was forfeited, by refusing an offer, made as a substitute for that relief, which the law would afford.

Strong appeals to our feelings have been made on behalf of the plaintiff. The hardship which he sustains by being compelled to leave his family and home to pursue the defendant here: the ruinous consequences to him, from the delay of a second investigation of accounts, which on the first trial, took the unprecedented time of six weeks before the jury could understand them; and the injustice of suffering the defendant to profit by the embarrassment created by his gross negligence, and want of good faith, have been placed before us in the most striking light. These appeals have not been without their influence, for they derive too much support from all the facts which appear on record; and we regret that the opinion we entertain of the law of the case, prevents us from putting an end to it. Nothing gives the

CAULKER
*vs.*
BANKS.

court more satisfaction than to be enabled to make its judgments meet the justice, as well as the law of each particulaar case. But it must, ere this have appeared clear to every one who has attended to the course of decisions in this tribunal, that on all those occasions, where the doing of equity would have violated a general and important rule, we have uniformly refused *to sacrifice the rule, to the case.* This is our situation here. The appellant invokes his right to be heard before this tribunal, and says he has been deprived of it without fault on his part. We cannot turn a deaf ear to this complaint, unless we violate a principle, which it is of the first importance to suitors in our courts to maintain: and nothing will reconcile the plaintiff so soon to this judgment which now compels him to go again before the parish court, than the reflection; how valuable the rule we obey would be to him, had the jury found a verdict against him, and by failing to take down the evidence, deprived him of the means of getting his cause re-examined here on the merits.

Various other questions have been made which the opinion just expressed renders unnecessary to examine; and it is therefore ordered, adjudged and decreed, that the judg-

ment of the parish court be avoided and re-
versed, and that the case be remanded for a
new trial, the appellee paying costs of this
appeal.

*Mazureau, Preston and Carleton*, for the plaintiff, *Grymes, Morse and Maybin*, for the defendant.