(16 Misc. Rep. 111.)

## PEOPLE v. SHEA.

(Supreme Court, Special Term, Schoharie County. February, 1896.)

1. CRIMINAL LAW—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
   On a motion for a new trial in a murder case, the newly-discovered evidence on which the motion was based was disclosed by the affidavit of one M., who had testified on the trial that deceased was killed by a shot fired by one B., and not by defendant, in which he was corroborated by three witnesses. The affidavit stated that he (affiant) fired the fatal shot, that his testimony given on the trial was false, and proceeded to detail the circumstances of the killing, among which he stated that three shots besides his own were fired at the time decedent fell, and that he did not know in what order his shot was fired. Affiant further stated that it was a correct narrative of the manner of decedent's death; that the confession was made voluntarily, and without any solicitation or previous knowledge by any one that he intended to make it; that he was prompted to make the confession only by his conscience, to prevent an innocent man from suffering. *Held*, that such affidavit did not show that on another trial defendant could produce evidence such as, if before received, would probably have changed the verdict, in which case Code Cr. Proc. § 465, subd. 7, provides that a new trial may be granted.

2. SAME—CREDIBILITY OF WITNESS—QUESTION FOR COURT.
   On a motion for a new trial, on the ground of newly-discovered evidence, which would probably have changed the verdict if it had been given on the trial (Code Cr. Proc. § 465, subd. 7), the credibility of the witnesses will be determined by the court.

3. SAME—REASONABLE DOUBT.
   On an application for a new trial, on the ground of newly-discovered evidence, the rule giving defendant the benefit of any reasonable doubt does not apply in determining whether the alleged new evidence would have changed the verdict.

4. SAME—CUMULATIVE EVIDENCE.
   Where defendant was convicted of murder, notwithstanding the testimony of one M., corroborated by three witnesses, that one B. killed decedent, newly-discovered evidence purporting to show that M. did the killing is merely cumulative, as the issue on the trial was whether defendant or another did the killing, and the same issue would be raised by the new evidence.

Bartholomew Shea was convicted of murder in the first degree, and moves for a new trial, on the ground of newly-discovered evidence. Denied.

George Raines and Thomas F. Fagan, for the People.
Galen R. Hitt and John T. Norton, for defendant.

MAYHAM, J. This is a motion for a new trial, made on behalf of the defendant, on the ground of newly-discovered evidence, under the provisions of subdivision 7 of section 465 of the Code of Criminal Procedure. The application discloses that on the 23d day of May, 1894, the grand jury of Rensselaer county presented an indictment against the defendant, charging him with the crime of

murder in the first degree, in killing one Robert Ross, and that on the 28th day of May the defendant was arraigned before a court of oyer and terminer in that county, and thereafter, on the 29th day of that month, entered a plea of not guilty to such indictment; and the trial of the indictment was at once had before such court, and on the 10th day of July, 1894, the defendant was convicted, and a judgment of conviction of murder in the first degree was entered against him, and he was, under such conviction, sentenced to suffer death, during the week commencing August 21, 1894. The execution was stayed on appeal from the judgment of conviction to the court of appeals, where such judgment was, in all things, affirmed (41 N. E. 505); and on the 13th of November, 1895, the court of oyer and terminer of Rensselaer county resentenced the defendant to be executed at Clinton State Prison during the week commencing with December 23, 1895. On the 20th of December, 1895, a respite was ordered by the governor until January 7, 1896; and on the 6th of January, 1896, the governor again respited the defendant until the 4th day of February, 1896. It is alleged that the reason which influenced the governor in granting this second respite was the receipt, by him, of a communication, in writing, from one John Mc-Gough, a convict under sentence in state's prison at Dannemora, in which he confessed that he, and not the defendant, was guilty of the murder of Robert Ross. And the governor, in view of the importance of the case and the gravity of the situation, felt called upon to grant the respite to facilitate a judicial investigation into the truth of the alleged confession, and thus to avoid, if possible, any mistake in the infliction of the death penalty,—a safe, wise, and humane exercise of the executive prerogative, but for the exercise of which he has not escaped sensational newspaper criticism. It must be borne in mind that the governor, in granting this respite, does not question or in any way impugn the correctness of the decision of the court by which the defendant was convicted, or the soundness of the conclusions of the highest judicial tribunal of the state in affirming that conviction, but, by such respite, made it possible, in a proper proceeding, and within the forms of law, to have the probable truth of that alleged confession judicially investigated, upon an application to the court or a judge, upon the ground of this newly-discovered evidence. It should also be borne in mind, both by the newspaper press as well as by all good citizens who desire the due administration of law, that the court or judge charged with the grave and responsible duty of passing upon and determining this question must be governed by the law and evidence, and would be the subject of impeachment if, in the discharge of that duty, it or he could be swerved one jot or tittle from the path of judicial rectitude by the resolutions of public meetings, or the censorious criticisms or threats of a sensational and vindictive press. And this court is not ignorant of the fact that, since the granting of the last respite in this case by the governor, intemperate appeals from certain newspapers have been made, and resolutions have been adopted at a public meeting, with no other apparent purpose than that of influencing and

intimidating this court in the discharge of its judicial duties, and which appeals and resolutions, if aimed at a trial jury, would subject their authors to indictment for the crime of embracery. Whatever the determination of this motion may be, no newspaper press or body of citizens, however high or influential, need claim the credit of having influenced the result, be it for or against the prisoner; and, under the circumstances surrounding this motion, it may be added that it will be a sad day for this commonwealth when the governor or judiciary yield to the ill-informed and ill-advised dictation of mass meetings or newspaper clamor.

The question to be determined in this case upon the application is not whether the original conviction is proper or legal. Both of these questions have been duly and legally settled beyond review by the decision of the court of appeals. I am not, therefore, called upon to review the soundness of the decisions of the trial or appellate courts in the conviction of the defendant, or the affirmance of that conviction on appeal to the court of appeals. The only question for me to determine arises under the provisions of subdivision 7 of section 465 of the Code of Criminal Procedure, which provides that a new trial must be granted "when it is made to appear, by affidavit, that, upon another trial, the defendant can produce evidence such as, if before received, would probably have changed the verdict; if such evidence has been discovered since trial, it is not cumulative; and the failure to produce it on trial was not owing to want of diligence." These are the rules which, regardless of extraneous influence, must govern in granting or refusing a new trial on the ground of newly-discovered evidence. For the investigation and determination of these questions, and these questions only, are the courts open on an application of this character, and these questions, when properly presented, the court or judge thereof is bound, by law, to entertain and decide on their merits. In determining this motion in favor of the defendant, four conditions must be found to concur: First, it must appear by affidavit that, upon another trial, the defendant can produce evidence such as, if before received, would probably have changed the verdict; second, that such evidence has been discovered since the trial; third, that it is not cumulative; fourth, that failure to produce it upon the trial was not owing to want of diligence. The failure of the defendant to establish, on this motion, either of the above conditions by competent proof, must result in the denial of this motion.

The alleged newly-discovered evidence on which it is claimed, on behalf of Shea, a new trial should be granted, is disclosed in the affidavit of John McGough, who was sworn as a witness on the trial of the indictment against Shea on behalf of the defendant, the substance and effect of whose testimony on the trial was that one Robert H. Boland, and not Bartholomew Shea, fired the fatal shot that killed Robert Ross. In his affidavit used on this motion, he denies the truth of his testimony given on that trial, and says that he, instead of Robert H. Boland, fired the fatal shot, and proceeds to detail the occurrence of the homicide, as follows:

"That the following * * * is a correct and truthful narrative of the manner in which, and the means by which, said Robert Ross lost his life: Deponent fired the shot into the back of the head of Robert Ross, which shot caused his death. Bartholomew Shea did not fire said shot. In the course of the mêlée, previously to the firing of the fatal shot, deponent had been himself shot in the back, and had fallen into the ravine, and said Robert Ross either jumped or fell on top of deponent. Said Ross then and there struck deponent several blows with a club, and then suddenly arose from deponent, and started out of the ravine, up the bank, onto the path, in pursuit of Bartholomew Shea, the defendant. Deponent at once raised himself to a kneeling position, kneeling upon his right knee, and as said Ross, being a little to the west of deponent, and about four feet to the right of deponent, said Ross' feet being at that instant about three feet higher than deponent's head, and said Ross then being headed in a northwesterly direction, with his face turned partly towards the east, deponent discharged his pistol at said Ross, and said Ross immediately sank to the ground, and did not move again. Deponent further says that at that time (the time that said Ross fell) there were three shots fired to the right of deponent by one John H. Boland, said Boland being upon the level ground; that, almost immediately, deponent, being still in the ravine, came in conflict with William Ross, William Quigley, and Adam Ross; that, while said last-named persons were striking deponent with their clubs, deponent discharged his revolver twice, was knocked almost senseless by one of such blows, and, having relaxed his hold upon his said revolver, lost the same; that, in a very few seconds, deponent recovered himself, arose, and proceeded out of the ravine in a westerly direction, running as best he could, because of the effects of the wound that he had received aforesaid; that, after going a little distance, John H. Boland and a number of persons, in all about twenty, as well as deponent can judge, pursued deponent, firing three shots after deponent, and so continued said pursuit of said deponent across said lot to North Fourth street, up North Fourth street to the residence of deponent's father, and into the yard attached to said residence; that deponent went into his father's house, and took off his clothes, which were covered with ashes, dirt, and briars from said ravine, had his wounds dressed as well as could be, put on other clothing, and departed for the residence of his aunt, as stated upon the trial, where deponent remained until he was arrested. Deponent further says that the foregoing is a correct and truthful narrative of the manner in which said Robert Ross met his death; that it was deponent's shot, above described, that killed said Robert Ross; that the said confession was made by deponent voluntarily, without any solicitation from any one, and without any previous knowledge by any one that deponent intended to make such confession; that deponent was prompted to make such confession only by his conscience, which forbade him to allow an innocent man to suffer death for deponent's act; that deponent all along concealed this confession, and swore falsely upon the trial, for the purpose of shielding himself, and avoiding giving testimony that would incriminate him; that, for the same reason, deponent deceived his counsel and Shea's counsel and, now that he has unburdened his conscience of this fearful secret, he only regrets that he did not tell the truth as to the fatal occurrence upon the defendant's trial; that deponent fully realizes the consequences that may come to him because of this confession, but deponent is willing to suffer such consequences, rather than that an innocent man should suffer death for deponent's unfortunate act. Deponent further says that, in giving testimony upon the trial of Shea which indicated that John H. Boland had fired the fatal shot, deponent felt assured that no evil consequences could come to said Boland therefrom, because of the relations existing between said Boland and the said Robert Ross and their associates in the mêlée."

The affidavit further disclosed the reason for and manner of his communication with the governor in reference to the proposed newly-discovered evidence, and shows that the same was made of the affiant's own volition, and without any previous conference or arrangement with the defendant, or any other person.

Would the evidence above quoted, if produced upon the former trial, probably have changed the verdict? That question this court is called upon to answer in the affirmative, before it can order a new trial on the ground of newly-discovered evidence, under the provisions of subdivision 7 of section 465 of the Code of Criminal Procedure. In determining this, we must, we think, compare the newly-discovered evidence, proposed to be given by this witness, with his evidence taken on the trial. On that trial, the witness, in effect, swore that Boland, and not Shea, shot and killed Ross. That testimony the jury must either have disbelieved or disregarded, or they could not have found Shea guilty. Suppose, to the evidence given by this witness on that trial, he had then and there added the proposed newly-discovered testimony; can this court rationally assume that such additional testimony would probably have changed the verdict? To indulge in such assumption would be to assume that the jury would have given more credence to the testimony of a witness whose testimony was irreconcilably contradictory, and tended to prove two facts palpably inconsistent with each other, than they did to his single statement that Boland killed Ross. Before a jury could adopt the theory sought to be established by this alleged newly-discovered evidence, they would be compelled to discredit the theory sought to be established by the defendant on the trial (which they did, as appears by their verdict) that Boland, and not Shea, shot Ross; and that would deprive McGough's testimony of the corroboration which it had on the trial in the testimony of Michael Delaney, Stanley O'Keefe, and William H. Riley, each of whom, in effect, agreed with McGough in their testimony that Boland, and not Shea, shot and killed Ross. I cannot, therefore, find that this alleged newly-discovered evidence from McGough, that he shot and killed Ross, had it been added to his testimony given on the trial, without direct corroboration, would have received more credence from the jury than did his corroborated evidence to the effect that Boland, and not Shea, killed Ross.

But it is urged by the learned counsel for the prisoner that there are circumstances, to be gleaned from the evidence on the trial, which tend strongly to corroborate this new version of McGough, disclosed in the alleged newly-discovered evidence, and most prominent among them is the fact that many of the people's witnesses, who claimed on the trial to have seen Shea shoot Ross, gave active chase in pursuit of McGough, who fled from the scene, and sought refuge in his father's house. It cannot be denied that this circumstance is one of much significance, standing alone; but it is urged by the people that it loses much of its force when it is understood that McGough, just previous to his flight, was believed to have shot and wounded William Ross, a brother of the deceased. On a careful examination of all the facts and circumstances pointed out and relied upon by the defendant's counsel as corroborations of the newly-discovered evidence, none seems to me so direct and pointed as the corroborations given by Delaney, O'Keefe, and Riley to McGough's testimony on the trial. Instead, therefore, of being cor-

roborated in its new version of the occurrence on the main fact as to who shot Ross, the proposed testimony of McGough will stand practically alone, and unsupported by any direct circumstance, except that at or about the time of the homicide he was armed with a pistol, and in close proximity to the deceased, engaged in a conflict with him. Nor is there such harmony between the affidavit of McGough in the moving papers on this motion and his sworn statement furnished to the governor's messengers to Dannemora as will be likely to commend the entire correctness of the proposed newly-discovered evidence to the favorable consideration of a jury. It is true that in both statements he swears that he killed Ross, and that Shea did not, but he involves his testimony in some doubt by the concluding paragraph of his affidavit, taken at the instance of Burlingame, wherein he says:

"I cannot tell whether the shot I fired was the first, second, or third of the four shots. I know one of the four shots was fired after I fired. I cannot tell whether it was the first, second, or third of these four shots that hit Robert Ross in the head."

The contradictory statements of McGough, under oath, without taking into account the claimed impeachment by impeaching testimony, would so weaken the force of his proposed testimony as to render it improbable that its introduction would have changed the verdict. To assume that would be to greatly underrate the ordinary intelligence and sagacity of a jury. We can hardly hold, therefore, that if this proposed testimony had been given on the trial, in addition to all the other evidence, including the testimony of McGough, it would have probably changed the verdict, and the test imposed by the statute is the probable effect on the verdict if the proposed evidence had been given on that trial.

But if we are at liberty to examine this proposed newly-discovered evidence in the light of its probable effect on the verdict of a jury on a new trial, if one were ordered, it seems by no means probable that, on the positive evidence of this witness on the former trial that Boland fired the fatal shot, a jury would give credence to the testimony which he now offers to give, that he, and not Boland or Shea, killed Robert Ross. I am not discussing, nor am I at liberty to discuss, the correctness of the verdict of the jury which convicted Shea. That question, at least so far as the judiciary is concerned, is settled past reconsideration or recall. I am only at liberty to view the proposed newly-discovered testimony in the light of the testimony given on the trial, and to say whether or not, if added to that evidence, it would probably have changed the verdict. Viewed from that standpoint, I fail to see that it would probably have changed the verdict, or, if introduced on another trial, that it would probably produce any other result. It is urged by the learned counsel for the defendant that the credibility of the testimony of a witness is always a question of fact for a jury, and that it is not within the province of the court on this motion to consider the credit due to the affiant McGough on this motion. In a general sense, the credibility of witnesses must properly be considered by a

jury. But, in a motion of this character, the court is called upon to consider the question whether the proposed evidence would, if given on the trial, have changed the verdict. That determination necessarily requires the court to consider the probable effect of the proposed evidence, and necessarily involves an inquiry into the character of the proffered proof, and the estimate the jury may and properly would make of the character of the proposed witness offering such testimony, for the purpose of determining whether the proposed evidence would have changed the verdict. The jury, in considering the testimony, might, where the witness confessed to willful false swearing, well conclude that without corroboration his testimony was unworthy of credit. To such a witness the maxim, "falsus in uno, falsus in omnibus," may properly be applied by a jury; and the court cannot, on a motion of this character, well be deprived of considering such fact. Nor can this court, in determining whether or not a new trial should be granted on this proposed newly-discovered evidence, adopt the humane rule of giving the prisoner the benefit of any reasonable doubt, which should control a jury in rendering a verdict in a criminal action. The proposed evidence must raise a reasonable presumption that its reception would have changed the verdict of the jury, or that, on a new trial, it would produce a different verdict, before the court can order a new trial. Code Cr. Proc. § 465, subd. 7; People v. Noonan, 14 N. Y. Supp. 519; Thomp. Trials, § 2759; People v. Hovey, 30 Hun, 358; Cole v. Cole, 50 How. Prac. 59. The question, therefore, for the court, is not whether, upon all the evidence, there is a lingering doubt of the guilt of the prisoner, but is confined to the single inquiry as to its probable effect on the verdict of a jury.

The second condition to which we have referred as a prerequisite to the granting of a new trial on the ground of newly-discovered evidence, to wit, "that such evidence has been discovered since the trial," seems to be fully met by the moving affidavits. It is proved by the affidavits of the defendant and his counsel who defended him on the trial of the indictment that the testimony of McGough, which is set forth in his affidavit on this motion, was not known to them, or either of them, until after the communication of McGough to the governor, which led to the governor's respite of Shea from January 5, 1896, to February 4th of the same year, to enable counsel to investigate the truth and sufficiency of such alleged newly-discovered evidence, and presumably to move for a new trial thereon. If such evidence had been known to the able and distinguished counsel for the defendant on the trial, it cannot be doubted that the same would, if attainable from McGough, have been introduced, and the theory of the defense would have been shaped accordingly. I cannot concur with the view of the learned counsel for the people in their contention that, because McGough and Shea were together on the occasion of this homicide, therefore the prisoner is charged with the knowledge of what occurred then, and that the alleged newly-discovered evidence is not, in fact, newly discovered. Such a contention would presuppose that Shea knew all that occurred on that

occasion. Nor can I assume, as claimed by them, that, because a large number of witnesses on the trial gave a different version from that now given by McGough, therefore the proposed evidence is false, and cannot be treated as newly-discovered evidence on this motion.

The third condition which the defendant is required to meet and establish on this motion is that the evidence offered and claimed as newly-discovered evidence is not cumulative. Has he met that condition within the authorities? Cumulative evidence is defined to be "that which goes to prove what has already been established by other evidence." 1 Bouv. Law Dict. 461. In a general sense, cumulative evidence may be considered to be such evidence as tends to strengthen or re-enforce evidence which has been received upon a given point or issue in the progress of a trial. But this rule is not of universal application, as was illustrated by Westbrook, J., in Cole v. Cole, 50 How. Prac. 61, where the learned judge uses this language:

"Evidence bearing upon the same issue in a cause is scarcely ever of the same character. Very often the existence or nonexistence of the facts upon which the cause turns depends upon a number of other independent ones from which the former are inferred. When the alleged new evidence is of the same character with that offered upon the former trial, it is cumulative; but, when it tends to prove a new fact bearing upon the issue made by the pleadings, it is not."

In Guyott v. Butts, 4 Wend. 581, which was a motion for a new trial upon the ground of newly-discovered evidence, Marcy, J., in discussing the question as to what is and what is not cumulative evidence, uses this language:

"I find no case in which a very distinct definition is given of cumulative evidence. The courts have sometimes used expressions seeming to warrant the inference that proof which goes to establish the same issue that the evidence on the first trial was introduced to establish is cumulative. If the evidence newly discovered, as well as that introduced on the trial, had a direct bearing on the issue, it may be cumulative. But we are not to look at the effect to be produced as furnishing a criterion by which all doubts in relation to this kind of evidence are to be settled. The kind and character of the facts make the distinction. It is their resemblance that makes them cumulative."

In People v. Superior Court of New York, 10 Wend. 291, which was a motion for a new trial, on the ground of newly-discovered evidence, Savage, C. J., in pronouncing the opinion of the supreme court, uses this language:

"According to my understanding of cumulative evidence, it means additional evidence to support the same point, and which is the same character of evidence already produced. For instance, the defendant in the court below proved by the teller that the bill in question was not delivered until after 12 o'clock. All subsequent witnesses who prove the same fact are cumulative. Their testimony is added or heaped upon the first witness."

In Steinbach v. Insurance Co., 2 Caines, 129, a motion for a new trial was made on the ground of newly-discovered evidence. The principal question litigated on the trial was as to the destination of the ship Catharine at the time of the writing of the defendant's pol-

icy of insurance. Livingston, J., in delivering the opinion of the court, says:

"It is said that, if a new trial be granted, there are two witnesses who were not known to the defendants at the time of the trial, who can testify to the destination of the Catharine. This was the fact principally controverted on the former trial, and we are now applied to for another, merely because all the witnesses who knew something of the matter have not been examined, Every one must perceive the inconvenience and delay which will arise from granting new trials upon the discovery of new testimony or other witnesses to the same fact."

In Smith v. Brush, 8 Johns. 65, the court says:

"It is against the general rule to grant a new trial merely for the discovery of cumulative facts and circumstances relating to the same matter, which was principally controverted on the former trial."

In People v. Superior Court of New York, supra, the court cites Pike v. Evans, 15 Johns. 210, with the following comment:

"The question upon the trial was whether a suit of clothes had been left at the stage office at Utica in season to be sent to Sackett's Harbor by the stage. The verdict was against the defendant. The newly-discovered testimony, the court says, is immaterial to make out the delivery of the clothes by the time agreed on, and the only objection was that the testimony was cumulative. They add, the newly-discovered evidence did not relate to any new fact. How could it? There was but one fact in dispute,—the seasonable delivery of the clothes."

This would seem to be so in this case. On the trial of the indictment against Shea, the principal question to be determined was whether he fired the fatal shot which killed Ross. He sought to establish that he did not, by proof that it was fired by Boland. The only purpose to be accomplished by such evidence was that of showing that the shot was not fired by defendant. Proof that it was fired by some other person than Shea would establish that fact; and, that fact established, it was wholly immaterial to his defense by whom the firing was done. Such evidence had been given by McGough, Delaney, O'Keefe, and Riley on the former trial. If, on this application, it was proposed to prove by another witness that he saw Boland fire the fatal shot, such evidence would, most undoubtedly, within all the adjudged cases, be cumulative, and would not, therefore, form the basis for the granting of a new trial, because the statute requires that the evidence shall not be cumulative. But the proposition is not to prove that Boland shot Ross, but that McGough did that act. The object is to prove that the shooting was by some person other than Shea, and thus to exonerate him from the charge. The point to be established by the evidence that some person other than Shea did the shooting is to prove him not guilty. Evidence that either Boland or McGough did the shooting bears equally on that point. In People v. Superior Court of New York, supra, Savage, J., says:

"According to my understanding of cumulative evidence, it means additional evidence to support the same point, and which is of the same character with evidence already produced."

Clearly, the proposed newly-discovered testimony, that McGough, and not Shea, shot Ross, is evidence to support the same point, and

which is of the same character with evidence already produced, and comes within the definition given by the learned chief justice above quoted. See, also, Cole v. Van Keuren, 51 How. Prac. 453. It tends, as we have seen, to prove that some person other than Shea shot Ross; and, when we read the affidavit of McGough in the moving papers with his affidavit used by the people in opposition to this motion, it may fairly be construed as leaving in doubt whether he or Boland shot Ross, for, at the conclusion of his affidavit taken at the instance of Burlingame, he fails to show which of the first three of the four shots fired at the time Ross fell caused his death, two of which shots were, as he claims, fired by Boland, and one by himself,—thus making his proposed testimony a partial corroboration or re-enforcement of the theory of the defense on the trial, that Boland shot Ross. Viewed in that light, his testimony would be cumulative within all of the adjudged cases; and his version of the transaction as now proposed would only have the effect of contradicting his former testimony as to the part he took in the transaction. But the testimony, if offered for the purpose of contradicting McGough's testimony on the trial would, within a well-settled line of authorities, be cumulative, and therefore not cause for a new trial on the ground of newly-discovered evidence. Brisbane v. Adams, 1 Sandf. 195; Hooker v. Terpening, 8 N. Y. Supp. 639; People v. Anthony, 56 Cal. 397; Higgins v. People, 98 Ill. 519; People v. Freeman, 92 Cal. 359, 28 Pac. 261; Stewart v. State, 66 Ga. 90; Parshall v. Klinck, 43 Barb. 203; Powell v. Jones, 42 Barb. 24; Cole v. Cole, 50 How. Prac. 59; Cole v. Van Keuren, 51 How. Prac. 451; Lawrence v. Ely, 38 N. Y. 42; Myers v. Riley, 36 Hun, 20.

Tested by the rules above referred to, I am forced to the conclusion that the proposed newly-discovered testimony is cumulative, and cannot therefore, under the provisions of subdivision 7 of section 465 of the Code of Criminal Procedure, be the basis for granting a new trial in this case on the ground of newly-discovered testimony.

If I am right in this conclusion, it becomes a matter of little or no moment whether the fourth condition imposed upon the defendant by that section of the Code of Criminal Procedure to authorize the granting of a new trial on the ground of newly-discovered evidence, to wit, that "the failure to produce it on the trial was not owing to want of diligence," is met. But, if that question was important under the view taken on this motion, I should have to hold that the case discloses no want of diligence on the part of the defendant or his counsel on the trial in not producing it. McGough was called by the defendant as a witness on that trial, and was thoroughly and repeatedly examined on the part of the defendant, and exhaustively cross-examined by the counsel for the people; and there was nothing in his testimony, nor, so far as I can find, in the testimony of any other witness, from which the defendant or his counsel would be led to suspect that he fired the fatal shot that caused the death of Robert Ross. The fact, if it existed, was concealed in the mind of McGough, and no diligence on the part of the

defendant or his counsel could discover it until it pleased McGough to disclose it, which he did, as appears, for the first time in his communication to the governor, long after the trial.

While there is much in this somewhat extraordinary case which might appeal to the executive department of the government, which alone is clothed, in cases of this character, with the attribute of mercy, but with whose prerogative this court has no power or inclination to interfere, I find nothing in this record on which, as matter of law, this court can grant a new trial, and must therefore deny this motion.

Motion denied.